[No. 12462.   Department Two.   August 11, 1915.]

# E. F. MASTERSON, *Appellant*, v. UNION BANK & TRUST COMPANY, *Intervener and Respondent*, IRA DAVISSON, *Defendant*.[1]

PAYMENT — PRESUMPTION — REMITTANCE BY MAIL — OWNERSHIP. Where a bank, upon request, delivered money in the mails by registered letter, addressed to the consignee, in the absence of any agreement or custom to that effect, there is no presumption that the carrier is the consignee's agent, but the presumption is that the money belongs to the sender until actually delivered to the consignee; the transaction being more in the nature of a payment than a consignment of goods and the creditor having the right to payment in person.

REPLEVIN—OWNERSHIP OF PROPERTY—DEFENSES—TITLE IN THIRD PERSON—ESTOPPEL. Where a bank, upon request, delivered money in the mails by registered letter, addressed to the consignee, and it was stolen in transit and the bank sued to recover it, the defense of ownership by the consignee is unavailable, where the consignee had appeared as a witness on behalf of the bank and estopped himself from claiming title to the money.

REPLEVIN—OWNERSHIP—EVIDENCE — SUFFICIENCY. Evidence that $2,500 was stolen from a registered mail package, intrusted to a Japanese, who made various purchases and was about to depart for Japan under suspicious circumstances, held sufficient to establish, in an action of replevin, that he stole the package, where his explanation of the possession of so much money was improbable.

SAME. In an action of replevin, evidence that the purchaser of articles stole, from the United States mails, money of certain denominations a few days before the purchases, and paid therefor with money of the same denominations, sufficiently establishes that the articles were purchased with the stolen money, in the absence of a showing that he had other money of like denominations.

SAME—OWNERSHIP—BONA FIDE PURCHASER—KNOWLEDGE OF THEFT. An attorney, securing from his client, charged with the theft of money, a bill of sale of articles recently purchased, cannot claim that he had no knowledge that the articles were purchased with the stolen money, where the bill of sale was made three days after the arrest of the client, and after attending the preliminary hearing at which the client was bound over to await the action of the grand jury.

[1]Reported in 150 Pac. 1126.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered March 30, 1914, upon findings in favor of the intervener, in an action of replevin, tried to the court.    Affirmed.

*Boyle, Brockway & Boyle*, for appellant.

*B. S. Grosscup* and *W. C. Morrow*, for intervener and respondent.

FULLERTON, J.—Sometime in the early weeks of January 1913, one M. P. Stoppel, of Garrison, Montana, ordered his banker at Deer Lodge, in the same state, to forward to him at Garrison $2,500 in money.   The Deer Lodge bank forwarded the order to the Union Bank & Trust Company of Helena, Montana, with the request that it comply therewith.   On January 14, 1913, the Helena bank selected bills of the denominations of five dollars, ten dollars and twenty dollars up to the amount required, bound them into a package suitable for mailing, and deposited the package in the post office at Helena to be forwarded to Stoppel at Garrison as registered mail.   The package did not reach Stoppel.   The post office inspectors traced it from the Helena office to Garrison, where it was deposited by a railway mail clerk in a mail pouch which was delivered to one Toda, a Japanese, an employee of the railway company at Garrison, a part of whose duty it was to carry the mail pouches from the depot to the post office.   The pouch was carried by Toda to the post office in the customary manner, but when opened by the postmaster was found not to contain the package, and subsequent search for it, which was thereupon instituted, failed to discover its whereabouts.

Toda, on the day following the loss of the package, obtained a leave of absence from his employer and started on a visit to Japan.   When he reached Seattle, some two days later, he purchased a gold filled watch with chain and charm, a diamond ring, a motorcycle, a draft on one banking house

in Japan in the amount of eighteen hundred yen, a like draft on another banking house in the amount of two thousand yen, passage on a steamer from Seattle (or Tacoma) to a port in Japan, and sundry small articles, the total of his purchases amounting to a sum between $2,400 and $2,500, the principal part of which he paid in bills of the denominations of five dollars, ten dollars, and twenty dollars. Shortly thereafter, when about to board the vessel on which he had procured passage to Japan, Toda was arrested by a United States marshal, on a warrant issued by a United States Commissioner sitting at Tacoma, charging him with the theft of the package of money lost at Garrison. When arrested, the articles before mentioned were taken from his possession by the officer arresting him. Toda employed one E. F. Masterson, an attorney of Tacoma, to conduct his defense on the charge of larceny preferred against him, and in payment of his fee, gave Masterson a bill of sale of the watch with the chain and charm, the ring, the motorcycle, and the bank draft for the amount of eighteen hundred yen. The marshal refused to deliver the articles over on the demand of Masterson, retaining them, as he stated, for evidentiary purposes and to protect the true owner. Toda was afterwards brought to trial in the state of Montana for the larceny of the money, in which trial the articles were used as evidence. At the conclusion of the trial, they were returned to the officer, and by him brought back to Tacoma, whereupon Masterson began the present action to recover them, or their value in case delivery could not be had. The action was instituted against the officer as the sole defendant. Subsequently, the Union Bank & Trust Company asked and obtained leave to intervene in the action, and set up title to the property in itself by reason of its ownership of the stolen money. The officer thereupon deposited the articles with the clerk of the court and filed an answer disclaiming interest therein. The action was then tried out on the issues as to ownership, between the Union

Bank & Trust Company and Masterson, resulting in a judgment in favor of the bank. Masterson appeals.

It is the appellant's first contention that the record fails to show that the intervener, the Union Bank & Trust Company, was the owner of the money taken from the mail pouch at Garrison, or is otherwise entitled to the articles purchased therewith. He argues that the depositing of the package containing the money in the mails, addressed to Stoppel, was a delivery of the money to Stoppel, vesting ownership in the money in him, and that he alone, in the absence of a reassignment to the bank, which the record fails to show, can claim the money or the proceeds thereof from the person in possession.

The record shows nothing more as to the contract between the parties which gave rise to the forwarding of the money than the facts heretofore recited; namely, that Stoppel ordered the money from his own banker, and that that banker requested another to forward it, which it did do in the manner indicated. It is undoubtedly a general rule that, when goods are ordered by a purchaser from a dealer, without stipulation as to the manner of their delivery, a delivery of the goods by a dealer to a common carrier for account of the purchaser is a delivery to the purchaser, subject only to the right in the dealer of stoppage *in transitu.* But it seems to us that the present case is not a case of the ordering of goods to be delivered in the ordinary way, but is more in the nature of the payment of an obligation. If it be the fact that the bank receiving the original order from Stoppel was indebted to Stoppel, or obligated in some way to him for the payment of the money demanded, it would not be a compliance with its obligation for it to deposit in the United States mails a package containing the money addressed to Stoppel. A creditor has a right to payment in person, or through his duly authorized agent, and the debtor cannot select an agency for him, even though the agency selected be the United States mails or other public

carrier. So here, contrary to the presumption that might arise in the sale of goods, the delivery in the mails of a package containing the money, addressed to the consignee, in the absence of some showing of an agreement or custom to that effect, does not raise a presumption that the carrier was the consignee's agent. The presumption is the other way; the money is presumed to belong to the sender until actually received by the person to whom it is sent. *Buell v. Chapin*, 99 Mass. 594, 97 Am. Dec. 58; *Dexter Horton Nat. Bank of Seattle v. Hawkins*, 193 Fed. 363.

But the conclusion may rest on another ground. The only person aside from the bank who can claim ownership of the money or the proceeds thereof is Stoppel, since he was the assignee or addressee of the package containing the money, and the person for whom it was intended. The record shows not only that he knew that the bank was claiming ownership of the money subsequent to its deposit in the mails and that its claim to the property here in suit was based on title in itself, but that he appeared in the action as a witness for the bank and testified to facts in aid of a recovery by the bank. Clearly, under these circumstances, he is estopped from claiming title to the property as against Toda, or Toda's assignee, if not as against the bank itself. Since the claim of ownership rests between the bank and Stoppel, Stoppel can by his acts waive his claim as to third persons, and we are clear that he has done so in this instance. *Murne v. Schwabacher Bros. & Co.*, 2 Wash. Terr. 191, 3 Pac. 270; *Douthitt v. MacCulsky*, 11 Wash. 601, 40 Pac. 186; *Shoemake v. Finlayson*, 22 Wash. 12, 60 Pac. 50; *American Bonding Co. v. Loeb*, 47 Wash. 447, 92 Pac. 282.

The next contention is that the evidence is insufficient to justify the conclusion that the package containing the money was taken by Toda. But without entering upon an extended review of the evidence, we think it preponderates in favor of the conclusion of the trial court. It hardly seems probable that Toda acquired this considerable sum of money, as he

testifies he did, by savings from his wages, when his manner
of living is considered, and the very considerable sums he
admittedly expended for other purposes from his savings are
deducted.  And the improbability is increased, we think, when
it is remembered that the sum is said to be the result of
accumulations extending over a period of years, which were
kept hidden under the floor of a sleeping room, in the
chimney of a bunk car, and in other out of the way places.
It is true that instances of accumulations in this manner are
not altogether unusual, but it is the habit of a person of a
different sort of intellect than this person is shown by the
record to possess.  This Japanese was bright and intelligent
with a good knowledge of American institutions and Ameri-
can methods of doing business, and had no distrust of its
financial institutions.  The probability is not great that a
man of his character would keep money in this way.

It is next contended that there is no evidence tending to
show that the articles for which this action was brought to
recover were purchased with the stolen money, but on this
question also we think the evidence ample.  It was shown
that the purchaser of the articles stole from the United
States mails, some three days before he made the purchases,
currency of certain denominations, that the articles for the
greater part were paid for in currency of similar denomin-
ations, and that the purchaser was not shown to have had
other money of like denominations.  Seemingly there is here
almost a direct tracing of the money stolen into the articles
sought to be recovered.  But the plaintiff was not required
to prove the fact beyond a reasonable doubt.  It is enough
if the evidence preponderated in its favor, and we are clear
that the evidence did so preponderate.

The person selling the watch and chain testified, however,
that he "believed there was a gold piece with the currency"
he received in payment for these particular items.  The
appellant argues from this there can be no recovery of these
items because it is not shown that Toda stole any gold.

But it appears that Toda had purchased the motorcycle, and perhaps other of the articles, before he purchased the watch and chain, and it is certain that if he paid for these in bills of the denominations mentioned, he received something in change. It is more probable, we think, that he so received the gold piece mentioned than that it was money acquired by him from another source.

Finally, it is said that the evidence failed to show that the appellant, when he received the bill of sale of the articles mentioned, had knowledge that it was property purchased with stolen funds, and that the trial court erred in finding that he did have such knowledge. But the evidence shows that he received the bill of sale some three days after Toda's arrest and after he had attended, as Toda's counsel, the preliminary hearing before the United States commissioner, at which Toda was bound over to await the action of the grand jury. Our conclusion is that the finding is supported by the evidence.

The judgment is affirmed.

MORRIS, C. J., CROW, ELLIS, and MAIN, JJ., concur.