## MARYLAND CASUALTY CO. v. GATES.

(Circuit Court of Appeals, Fourth Circuit. May 21, 1923.)

No. 2042.

1. **United States marshals ⬗31—Marshal not mere trespasser in seizing goods under writ.**

A marshal, acting strictly in pursuance of a statute and under decrees and orders of court, with appropriate bonds given to support his action, cannot be held liable as a mere trespasser for seizing and holding property under a writ of replevin.

2. **United States marshals ⬗36—Replevin suit for plaintiff res judicata on issue as to validity of seizure.**

In an action on the bond against a United States marshal for wrongful seizure of property under a writ of replevin, a judgment for replevin plaintiff for the possession of the property *held* res judicata as to the validity of the marshal's seizure under the writ of replevin.

3. **Estoppel ⬗52—"Equitable estoppel" operates on general principles of equity.**

"Equitable estoppel" operates to prevent a party from asserting his rights under a technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel in Pais.]

4. **United States marshals ⬗36—Real owner of property must sue on bond for wrongful seizure.**

An action against a surety for the wrongful seizure by the marshal of property under writ of replevin cannot be maintained by one who prior to the replevin suit had participated in the organization of a corporation, in which her interest in the property was represented by one-half of the corporate stock, the other one-half being owned by her sister, to whom the property had been awarded in a prior action, and the shares of stock having been issued and the new company having begun business; the fact that the property had not been delivered to the corporation because of the institution of the replevin suit not affecting the right of such corporation, rather than plaintiff, to sue for wrongful seizure.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law by Sue Phillips Gates against the Maryland Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed.

Walter L. Clark, of Baltimore, Md. (Soper, Bowie & Clark, of Baltimore, Md., on the brief), for plaintiff in error.

John G. Barnes, of Seattle, Wash., and George A. Finch, of Baltimore, Md. (P. C. Barnes, of Cumberland, Md., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. This action was instituted against the plaintiff in error as surety on the official bond of John M. Boyle, United States marshal for the Western district of the state of Washington,

to recover damages alleged to have been sustained by the defendant in error by reason of the unlawful seizure of certain property described in the declaration, claimed to have been unlawfully seized and taken by the marshal from the possession of the defendant in error, which he declined to return on due demand being made therefor. The facts bearing on the case are in many respects most unique and unusual, and may briefly be stated as follows:

Some 30 years prior to the happening of the incidents out of which this suit arose, Edward C. Curtis, of Seattle, Wash., a photographer of reputation, conceived the idea of preserving for future generations the life history of the rapidly vanishing Indian tribes of North America, and to represent the same by photography as well as historically. He worked diligently in pursuit of his ambition, and established and maintained for many years a large studio at Seattle, in which he gathered some 40,000 negatives of Indian subjects, masses of field notes, Indian curios, and data of all kinds necessary to complete the work, under the title of "North American Indian." The publication, as planned, was to consist of 20 volumes and 20 portfolios, the latter to contain large prints of Indian subjects, and the other volumes to contain reading matter and small pictures. The edition was limited to 500 sets, and was to be sold only by subscription, at the price of $3,000 a set, which was later increased to $4,000. Mr. Curtis succeeded in interesting capitalists in his undertaking, who advanced large sums of money, upon agreement by Curtis to store in safety deposit vaults in Seattle all Indian photographic plates, negatives and positives, then owned by him and in his studio at Seattle, with all Indian manuscripts and notes and data thereafter obtained, and to deliver the warehouse receipts therefor; said Curtis, however, reserving the right to use everything so deposited in the publication of the North American Indian. The business grew, and was finally incorporated in the state of New York, under the title of "North American Indian," and the publication was transferred to New York; said Curtis having in the meantime transferred by proper bill of sale to the North American Indian corporation all of his interests in said properties, as well that in Seattle as in New York, and went to New York, where he stayed for a long time and conducted the business as president of the new company, leaving the Seattle part, viz. the photographic and curio business, to be conducted by his representatives there, using much of the output in connection with the New York publication.

Pending these transactions, some time in the year 1919, a divorce suit was instituted by Mrs. Curtis against her husband, in the local court at Seattle, and during that year the divorce was granted to Mrs. Curtis, and as a part of the decree Mr. Curtis was ordered to turn over to Mrs. Curtis various properties, including the studio at Seattle, and all rights, privileges, franchises, and permits which he had, through any agreements or contracts with the North American Indian, to sell or display Indian pictures and products of the North American Indian, and said Curtis was restrained from selling or disposing of the property. The portion of the decree affecting the property was appealed from, and on the 6th of April, 1920, was affirmed by the appellate court.

Mrs. Sue Phillips Gates, the defendant in error in this suit, a sister of Mrs. Curtis, some time in July, 1919, pending the appeal from the divorce decree, agreed with her sister, Mrs. Curtis, in anticipation of the affirmance of the decree appealed from, that they would form a corporation to thereafter conduct the business. There were to be 15,000 shares of stock issued, of which Mrs. Curtis was to own 7,200 and Mrs. Gates 7,200, leaving 600 shares unissued. Mrs. Curtis was to transfer to her sister certain portions of the property, viz. the "Indian property," which the latter was to turn over to the corporation in payment of her stock, and Mrs. Curtis was likewise to deliver to the corporation the "portrait" portion of the business, in payment of her 7,200 shares of stock. Mrs. Gates paid nothing for the property which she claims she was to receive, because of her sister's desire to have her in the business, on account of her experience in previously operating the same, and they thus became jointly interested in the new enterprise. The company did no active business until after the decision of the 6th of April, 1920, affirming the decree of the lower court and which did not become operative for 30 days after it was entered. Within four days of the actual rendition of the decree of the appellate court, to wit, on the 10th of April, 1920, a bill of sale was executed by Mrs. Curtis to Mrs. Gates, covering the Indian property agreed to be transferred to her, on the formation of the company, and while there is nothing to show the formal transfer of the property from Mrs. Gates to the new company, she received the 7,200 shares of stock based upon the transfer, and the company was organized, and proceeded with its business; Mrs. Curtis being president, and Mrs. Gates vice president and secretary thereof.

On the 19th of April, 1920, and within the 30 days of the announcement of the decision of the Supreme Court on the 6th of April (110 Wash. 644, 188 Pac. 771), the action of replevin in which the property was seized by the marshal, and out of which this suit arose, was instituted in the United States District Court for the Western District of Washington, Northern Division, by the "North American Indian," a corporation of the state of New York, against Edward S. Curtis and Clara J. Curtis and the Curtis Studio Incorporation, to recover property at Seattle, claimed to be owned by the North American Indian, and of which the portion claimed by Mrs. Curtis was part. Proper bond having been given in the replevin suit, the marshal, Boyle, on the 19th of April, 1920, made seizure of the property, which action is claimed to be the trespass by him committed in this suit. On the 22d of April, Mrs. Gates served on the marshal her third party claim, supported by affidavit, as owner of the property levied on, and charged that the writ under which the marshal possessed himself of the same was void, and demanded the return of the goods. The marshal thereupon demanded of the plaintiff in the replevin suit an indemnifying bond, as required by statute, which was duly given, and neither the claimant, Mrs. Gates, nor the defendant in the replevin suit, gave or offered to give bond, entitling them to the retention of the property, and the same was left in possession of the plaintiff in the replevin suit.

That suit was regularly proceeded with, and twice tried in the United States District Court for the Western District of Washington, with the result that the property, including that seized by the marshal, was held to belong to the North American Indian, plaintiff in the replevin suit. From that decision an appeal was taken to the United States Circuit Court of Appeals for the Ninth Circuit, in which the action of the lower court was affirmed. 277 Fed. 909. Pending the hearing of this case in the federal court, in which Mrs. Gates filed her third party claim, she was in court during both trials, was cognizant of what was done, and what would be the effect of the decision. She was the vice president and secretary of the new company formed by her sister and herself, to use the property in the event of recovery. Her counsel in making the third party claim was her present counsel, as he was also counsel for her sister, Mrs. Curtis, and at the first trial she was called and examined as a witness in behalf of Mrs. Curtis.

During the pendency of these proceedings, and of the litigation referred to, this suit was on the 14th of October, 1920, instituted in the Maryland district on the marshal's bond, the marshal not being made a party, and was tried on the 5th of June, 1922, and a verdict rendered for the defendant in error for $10,000, on the day on which the Circuit Court of Appeals for the Ninth Circuit rendered its decision in the replevin suit, and judgment was subsequently entered on the 21st of June in the court at Baltimore, on the verdict of the jury, against the plaintiff in error, from which action this writ of error was sued out.

Many errors are assigned to the action of the trial court, covering rulings upon the pleadings and admission and rejection of testimony, in giving and refusing instructions, and to the charge of the court, and the rendition of judgment in favor of the defendant in error upon the verdict. These assignments need not be gone into in detail, though many of them present troublesome and difficult questions, as in our view the case should turn upon the effect to be given to the action of the defendant in error in making her third party claim to the property, and her subsequent course and conduct in connection with the trial of the replevin suit in which she asserted such claim, and whether she is not estopped from maintaining this suit, and whether the same should not have been instituted, if maintainable at all, in the name of the Curtis Studio of Seattle, the corporation organized by herself and Mrs. Curtis, her sister, the defendant in the replevin proceeding. These questions will be specifically considered.

[1] First. The weakness of the defendant's case, as presented by counsel in argument, is that the marshal in what he did is treated as a trespasser, and the action of the court in the replevin suit as void, because an action of replevin did not lie in the courts of the state of Washington, and no rights could be secured thereunder, or protection had to those depending thereon. Neither of these positions is correct. In no event could an officer acting strictly in pursuance of a statute and under decrees and orders of court, with appropriate bonds given to support his action, be treated as a mere trespasser. 23 R. C. L. pp. 895, 896, 897; 24 R. C. L. 945. Nor is the position well taken as to the right to maintain the replevin action. This identical question was

raised in the District Court in that state, and the Circuit Court of Appeals, and decided by each court adversely to the contention; the Circuit Court of Appeals well saying that the irregularity specified was in no measure prejudicial to the defendant. Moreover, the Supreme Court of the state of Washington only recently entertained a replevin suit instituted by the new corporation organized and owned by the defendant in error and her sister, Mrs. Curtis, against one claiming portions of the property involved, and acting through the same counsel as represents the defendant in error here. Curtis Studio v. Lennes, 208 Pac. 79.

Second. Is the defendant in error estopped from maintaining this action by the judgment of the United States District Court for the Western District of Washington in the replevin suit involving the identical property here, by reason of her relation to the property and the parties, and her action and conduct in connection with the litigation? The correct answer to this inquiry involves the doctrine of res judicata, estoppel, and equitable estoppel, and when the same should apply as a relief against transactions once lawfully closed.

[2] Res judicata, as a branch of estoppel, is based upon the fact that litigation must cease sometime, and that, where a particular issue has been tried and decided by the court, the same issue will not be tried again between the same parties and their privies. Undoubtedly a judgment in the replevin suit in the United States District Court for the Western District of Washington against the North American Indian, would have protected Mrs. Curtis and her sister and privy, the defendant in error here, claiming under her. Hence, upon the happening of the directly contrary result, the judgment in favor of North American Indian operated and became effective to protect that corporation from further attempt on the part of either Mrs. Curtis or Mrs. Gates, or those claiming under them, or either of them, to recover the property in dispute.

[3] The difference between equitable and legal estoppel is well stated by Chief Justice Perley, speaking for the Supreme Court of New Hampshire, as follows:

"The equitable estoppel and legal estoppel agree indeed in this: That they both preclude from showing the truth in the individual case. The grounds, however, on which they do it, are not only different, but directly opposite. The legal estoppel shuts out the truth, and also the equity and justice of the individual case, on account of the supposed paramount importance of rigorously enforcing a certain and unvarying maxim of the law. For reasons of general policy, a record is held to import incontrovertible verity; and for the same reason a party is not permitted to contradict his solemn admission by deed. The same is equally true of legal estoppel by matter in pais. Legal estoppels exclude evidence of the truth and the equity of the particular case to support a strict rule of law on grounds of public policy. Equitable estoppels are admitted on the exactly opposite ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a technical rule of law when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth." Horn v. Cole, 51 N. H. 287, 289, 12 Am. Rep. 111, and approvingly cited in Pomeroy's Equity Jurisprudence, § 802.

This authority seems strikingly appropriate here. Mrs. Gates, the defendant in error, of her own accord, appeared in the replevin suit in the federal court, and asserted her alleged third party rights, forcing the giving of the indemnifying bond by the plaintiff in that suit The suit was vigorously prosecuted, Mrs. Gates and her sister, Mrs. Curtis, with whom she was interested, actively participating therein, and from every just and equitable consideration she should be as much bound by the judgment as was her sister. She was identified with the property in dispute, even before possession thereof had been awarded to her sister, and the same was to be used for the benefit of the new company which she was to manage. She was directly interested in the outcome of the litigation, as a favorable decision would set at rest the title of her sister, with whom she was privy. They were represented by the same counsel. She was vice president and secretary of the company, and was to conduct the new business with the property in suit, and she was cognizant of the purpose and progress of the litigation, and the issues therein. She was present in person at both trials, as was her counsel. At the first trial she testified in favor of her sister, in whose success she was vitally interested. In these circumstances, she is as much bound by the result of the litigation as if she had been technically and formally a party.

This is unquestionably the rule in the state of Washington. The case of Shoemake v. Finlayson, 22 Wash. 12, 60 Pac. 50, will be found of special interest. There the plaintiff sought to recover possession of real property, and to cancel a sheriff's deed. Plaintiff was the husband of Mary A. Shoemake, who had been plaintiff in an action brought against Finlayson and the sheriff, for the purpose of enjoining the execution of the sheriff's deed to the identical premises involved in this suit. There was a judgment against Mrs. Shoemake in the sheriff's case. She had claimed to be the owner in fee under a deed from her husband, but the court held the deed from the husband to the wife was void. Then Shoemake attempted to cancel the sheriff's deed, and the court said:

"The plaintiff in this action was a witness on the trial of the former action and was fully acquainted with the character and object of that action, and the issues made therein. He was directly interested in the result, and in sustaining the title of his grantee, which was assailed therein, and, under such circumstances, he is estopped by the judgment as fully as if he had been a nominal party thereto"—citing Douthitt v. MacCulsky, 11 Wash. 601, 40 Pac. 186, and cases cited.

The Supreme Court of Washington, in a very recent litigation therein affecting portions of the property claimed to have been recovered by Mrs. Curtis under the divorce decree, in which the new company owned and organized by the two sisters, Mrs. Curtis and Mrs. Gates, was plaintiff, passed upon the effect of the appearance of the defendant in error in the very case in the federal court, impleaded here, which would seem to put at rest that question. The court, speaking through Judge Mackintosh, said:

"* * * It was also erroneous for the court to withdraw the defense of estoppel raised by appellant's second affirmative defense; the law being that persons, although not parties to a litigation, who are witnesses

in the trial of a former action involving the same property although between different parties, and who are fully acquainted with the character of the former action, and the issues there involved and are directly interested in the result and in sustaining the title in one of the parties to that action are estopped by the judgment as fully as if they had been nominal parties thereto. Douthitt v. MacCulsky, 11 Wash. 601, 40 Pac. 186; Shoemake v. Finlayson, 22 Wash. 12, 60 Pac. 50; Masterson v. Union Bank & Trust Co., 86 Wash. 560, 150 Pac. 1126, L. R. A. 1918A, 531. If it were shown in this case that in the District Court of the United States an action was waged between the parties under whom the appellant is claiming title, and the parties who are asserting title adversely thereto and making a claim in conformity with that now presented by the respondent, that the officers of the respondent (they being all the executive officers of the respondent) were in attendance upon that trial, one as attorney, one as a party, and one as a witness, and were familiar with all the issues in that litigation, under the doctrine of the cases cited above, their conduct would estop the corporation of which they are officers from now taking a position contrary to that assumed by them at that time." Curtis Studio of Seattle v. Lennes (Wash.) 208 Pac. 79, 81, supra.

Third. Can this suit be maintained in the name of the plaintiff, the defendant in error, or should it have been instituted in the name of the new corporation, Curtis Studio of Seattle? This involves the question of ownership of the property sued for in the replevin suit, and whether Mrs. Gates ever legally acquired title thereto, because of lack of possession of the property, personally or through her grantor, at the time of the seizure, if she had not lawfully parted with her rights and interests therein by her transfer of the same to the Curtis Studio of Seattle. This depends largely upon a correct understanding of the testimony, from which a few excerpts will be made from the evidence of the defendant in error. On direct examination, she said:

"Q. What had been the transaction between Mrs. Curtis and you, if anything, in relation to the purpose of turning this property over to you, and the reason for it? A. I had been in the business, and she had not ever been in public life, and I understood the handling of the business end of it, and so I made the change from living in Spokane, and came to Seattle and took part in the business. Prior to this time we had formed a corporation and I had subscribed for shares of stock in the corporation. I paid for my stock in the Curtis Studio, Incorporated, with the Indian negatives and curios.

"The Court: Mrs. Curtis transferred—I will say, rather than gave or sold to you—transferred the Indian negatives to you, and you paid for the stock in this newly incorporated thing by turning over to this newly incorporated thing what your sister had transferred to you?

"The Witness: Yes; for my business ability in the Studio."

Witness further testified upon re-examination and recross-examination as follows:

"Q. Did you intend to testify or convey the idea that any of this Indian property was to be given back to Mrs. Curtis, or to a corporation in which Mrs. Curtis was to have a half interest? A. That was to go in the business. Mrs. Curtis paid for her 7,200 shares of the stock with the other part of the business; the portrait business. No part of her 7,200 was to be paid out of this Indian property; that was to be my part."

Upon cross-examination:

"I was to get 7,200 of stock, and Mrs. Curtis was to get 7,200 of stock.

"Q. You did not put in any actual cash in this corporation, or it was not

. intended that you should put in any actual cash in this corporation, at all? A. I was to give my services.

"Q. Was the stock to be issued for your services, or wasn't it to be issued for this property of Mrs. ———? A. This property; but Mrs. Curtis felt she could not go on with that business without any assistance, and so that—

"Q. You would be equal stockholders, but you would not put in any cash? A. No.

"Q. She simply transferred this personal property to you, so that you could turn it in and get the stock; that is correct, isn't it? A. Yes; I was to go in business with her."

It seems entirely clear, from the testimony in this case, that as early as July, 1919, the two sisters, in anticipation of the favorable outcome of Mrs. Curtis' divorce proceedings, organized the corporation; its purpose being to continue the studio business at Seattle. The stock was duly issued, the same to be paid for by their respective interests in the property involved in the replevin litigation herein mentioned. Mrs. Curtis was to give to her sister the "Indian Curio" property, to be in payment of her part of the stock, and Mrs. Curtis was in turn to put in the "picture part" of the property, in settlement for her stock.

[4] Manifestly the property thus set aside for Mrs. Gates was not for general disposal by her, as it constituted just what was to be used in conjunction with the other property of Mrs. Curtis, in the conduct of the new business, and was chiefly valuable for that reason, and without which there would have been no business to conduct. The corporation was organized, Mrs. Curtis being made president, and Mrs. Gates vice president and secretary, and the stock issued based upon the input by the two sisters of the property described, each of them receiving 7,200 shares of stock as agreed upon. The business was started, and the new company sued in at least one instance to recover property claimed to have been diverted from that recovered in the divorce litigation. The fact that the property has not been delivered is because of the outcome of the replevin litigation. It by no means follows that the new company is not the owner thereof, as far as the same is capable of production, as it is of all rights and interests accruing through it or arising therefrom, and this follows from the issue of the stock in payment therefor.

The successful outcome of this suit, if it could be maintained in the name of the defendant in error, instead of that of the corporation, would leave the latter the owner of the property, without having the same, with its stock issued, outstanding and unpaid for, and the defendant in error, who neither delivered the property on the faith of which the stock was issued, or paid for her stock, the owner of a judgment growing out of the alleged unlawful seizure of the property for $10,000, which she could collect and expend at will, without the slightest regard to the company, or her obligations and liabilities therein and thereto. The suit should have been instituted in the name of the company. The amount of the judgment recovered is an asset of the corporation, liable for its obligations, and, after payment of the same, is for the benefit of all its stockholders alike.

Fourth. The court's conclusion upon the whole case is that there is no evidence legally sufficient to entitle the plaintiff to recover, and that a verdict should have been instructed for the defendant.

Reversed.