OPINION OF THE COURT
Thomas A. Dickerson, J.
The plaintiff, Michael J. DellaGala (DellaGala), retained the defendant, Harvey Brown (Brown), an attorney admitted to practice law in the State of New York, to collect a debt owed to plaintiff arising from the sale of his business. After some negotiations a stipulation of settlement was entered into wherein the debtors were to pay DellaGala “$50,000 upon execution of *446 the agreement, $100,000 by certified or bank check on or before March 15, 1997 and $75,000 in monthly installments of $1,866.38 for a period of four years” (defendant’s exhibit D). The $100,000 Certified Check
On March 11, 1997 the debtors obtained a certified check in the amount of $100,000 (the $100,000 check) made payable to DellaGala. On March 12, 1997 the debtors delivered the $100,000 check personally to Brown at his law office in White Plains, New York. Upon receiving the $100,000 check Brown telephoned DellaGala at his home and learned[1] that he was on vacation but would return on March 16, 1997.
What To Do With The Check?
DellaGala had not given Brown any instructions on how the check was to be delivered to him, e.g., personal delivery, regular mail, certified mail, return receipt requested. On March 12, 1997, Brown decided to mail the $100,000 check by regular mail to DellaGala’s home (defendant’s exhibit A [“Enclosed is the $100,000.00 certified check from Jayco Provisions, Inc. due on March 15, 1997. It was received by me today”]).
Lost In The Mail
Brown’s cover letter and the $100,000 check were lost in the mail. The $100,000 check was never recovered, was never negotiated and no evidence was introduced to show that it was stolen or otherwise misappropriated by the defendant.
The Check Is Eventually Replaced
On August 4, 1997, nearly five months later, the plaintiff received a $100,000 replacement check from the debtors (plaintiff’s exhibits 3, 6; defendant’s exhibits B, C [“Enclosed is a bank check for $100,000.00. This check was issued as a result of the stop payment on the certified check sent to your attorney that was misplaced, stolen or otherwise lost. You and I signed papers requesting Chase Bank to cancel that check. I am sending this certified return receipt requested”]).
What About The Lost Interest?
For nearly five months DellaGala did not have use of the debtors’ $100,000 payment due on March 15, 1997. DellaGala calculated that he lost $3,300 in interest payments because of the delay and blamed Brown for this loss. According to Della-Gala, Brown accepted responsibility for the loss (plaintiff’s exhibit 4 [“I did not receive a check from Mr. Brown until August *447 4, 1997. Mr. Brown told me several stories as to why the payment was delayed, but did say that it was his responsibility and that he would pay me the amount equal to the interest that I lost * * * The amount was in excess of $3,300”]).
The Grievance Committee
After Brown ignored several requests for payment (plaintiffs exhibit 4 [“Although he has stated several times that he would forward the money to me, I have not yet received it. Mr. Brown no longer answers my phone calls or responds to my letters”]), DellaGala filed a complaint with the Grievance Committee for the Ninth Judicial District (the Grievance Committee) (plaintiffs exhibit 4 [“I feel that his actions are unconscionable and disciplinary action * * * is required”]).
A Letter Of Admonition
The Grievance Committee requested the defendant to “answer [the complaint] within ten days of receipt and [advised defendant] that a failure to do so constitutes ‘professional misconduct’ independent of the merits of the complaint” (defendant’s exhibit D). For reasons best known to himself Brown refused to cooperate with the Grievance Committee and was issued a letter of admonition (defendant’s exhibit D [“The Committee concluded that your conduct in failing to cooperate with the Committee’s investigation is a violation of Disciplinary Rule 1-102 (A) (8) of the Code of Professional Responsibility by having engaged in conduct that adversely reflects on your fitness to practice law”]). The Grievance Committee advised DellaGala of its findings (plaintiffs exhibit 5 [“all the facts pertaining to your complaint were considered * * * The Committee determined that the attorney had engaged in professional misconduct (and) was disciplined by the issuance of an admonition”]).
DISCUSSION
Based upon the foregoing, the court finds that the plaintiff has stated a cognizable cause of action for legal malpractice in that the defendant was negligent in mailing the $100,000 check by regular mail and/or was negligent in failing to hold onto the check and personally deliver it to the plaintiff.
The Risk Of Mailing Payments
Using regular mail[2] to send extraordinary sums of money is a risky business, indeed. Were the facts otherwise this case *448 would be relatively simple. For example, had the debtors mailed the $100,000 check to the plaintiff creditor without instructions to do so or a prior course of conduct from which such an instruction might be inferred, then the risk of the loss of five months’ worth of interest would be upon the debtors (see, e.g., Jung v Second Ward Sav. Bank, 55 Wis 364, 13 NW 235, 236 [1882] [“the rule (is) that where payment is made by remittance by mail to the creditor the transmission is ordinarily at the risk of the debtor. This is doubtless so in the absence of an express direction of the creditor to remit in that way, or where there is no usage or course of dealing from which the authority of the creditor to so remit may be inferred”]; Masterson v Union Bank & Trust Co., 86 Wash 560, 563, 150 P 1126, 1127 [1915] [“the money is presumed to belong to the sender until actually received by the person to whom it is sent”]; Hoch v Hitchens, 122 Mich App 142, 147, 332 NE2d 440, 441-442 [1982] [“the actual delivery of legal tender is not required where there is a course of dealing which justifies the debtor in believing that some other means (e.g., mailing) * * * will suffice”]; 60 Am Jur 2d, Payment, § 25 [“To absolve a debtor who transmits money by mail to his creditor for the payment of his debt from the hazard of loss in the transmission, it is necessary that he show authority from the creditor to remit in this manner, or a usage or course of dealing from which such authority may be inferred”], § 27).
No Claim Against The Debtors In this case, however, the plaintiff is not suing the debtors for a loss of interest. The debtors properly obtained a $100,000 certified check as required by the stipulation of settlement and personally delivered (not mailed) the check to the defendant, the plaintiffs designated agent. After receiving the check and after learning that plaintiff would return from a vacation four days later, the defendant, for reasons never fully articulated herein, decided to mail a $100,000 certified check by regular mail.
*449 Legal Malpractice
In order to recover for legal malpractice, “a plaintiff is required to establish that (1) the attorney was negligent, (2) the attorney’s negligence was the proximate cause of the loss sustained, and (3) the plaintiff suffered actual and ascertainable damages” (Walter D. Peek, Inc. v Agee, 235 AD2d 790, 790- 791 [1997]; see also, Farrauto, Berman, Fontana & Selznick v Keowongwan, 166 Misc 2d 804, 810 [1995]).
On the other hand an attorney may not be liable in malpractice if it can be shown that he or she made a mistake in judgment (see, e.g., Bernstein v Oppenheim & Co., 160 AD2d 428, 430 [1990] [“an attorney is not held to the rule of infallibility and is not liable for an honest mistake of judgment where the proper course is open to reasonable doubt * * * Thus ‘selection of one among several reasonable courses of action does not constitute malpractice’ ”]; Walter D. Peek, Inc. v Agee, supra, at 791- 792 [“it nonetheless is well settled that ‘an attorney may take chances’ * * * Clearly, there is no liability for ‘an honest mistake of judgment where the proper course is open to reasonable doubt’ ”]).
Issue Preclusion
What effect, if any, should the action of the Grievance Committee in issuing a letter of admonition to the defendant have upon the merits of this lawsuit (see, e.g., Heyward v Pirrotti, NYLJ, Aug. 4, 1998, at 26, col 1 [Yonkers City Ct] [discussion of preclusive effect of the decision of the Fee Dispute Committee of the Westchester County Bar Association on the merits of a client’s claim for a refund of a portion of a retainer])?
Although the Grievance Committee’s letter to the plaintiff suggests a finding of malpractice (plaintiff’s exhibit 5 [“After consideration of the complaint, the Committee determined that the attorney had engaged in professional misconduct”]) its private letter to the defendant makes it clear that defendant’s failure to respond to the investigation was the ground for the letter of admonition (defendant’s exhibit D [“The Committee concluded that your conduct in failing to cooperate with the Committee’s investigation is a violation of Disciplinary Rule 1-102 (A) (8) of the Code of Professional Responsibility”]). Given the ambiguity of these two letters and the lack of any evidence that the parties agreed to binding arbitration before the Grievance Committee (see, e.g., Altamore v Friedman, 193 AD2d 240, 241 [2d Dept 1993] [“(the parties) stipulated in writing to binding arbitration conducted under the auspices of the Nassau County Bar Association”]; Heyward v Pirrotti, supra), this court must conclude that the Grievance Committee’s letter of *450 admonition has no legal significance herein (see, e.g., Matter of Adolph, NYLJ, Feb. 10, 1997, at 7, cols 1, 3 [1st Dept 1997] [“respondent’s failure to cooperate with the Committee is not a proper basis for ordering that he make restitution * * * ‘Restitution cannot, however, be directed in the absence of a finding that respondent wilfully misappropriated or misapplied money ”]).
What Should The Defendant Have Done?
Instead of mailing the $100,000 check the defendant should have held onto it for four days and personally delivered it to the plaintiff. Assuming arguendo that mailing the $100,000 check was justified, which it was not, the defendant should have insured it, certified it and sent it by registered mail, return receipt requested. The defendant chose, however, to select the least secure and least reasonable alternative, i.e., mailing the $100,000 check by regular mail. Such a choice was not reasonable, not justified and not equivalent to the more secure alternative of holding onto the check and personally delivering it to the plaintiff four days later.
All of the elements of legal malpractice having been established herein, the court finds that the defendant was negligent, that his negligence was the proximate cause of the loss of the check and that the plaintiff lost five months’ worth of interest on $100,000 as a result. The defendant is liable to the plaintiff for the lost interest limited to $3,000, the jurisdictional limit of this court.

. At trial DellaGala claimed that he had advised Brown prior to his departure that he would be on vacation until March 16, 1997.

. See 60 Am Jur 2d, Payment, § 25 (“If the method by which an obligation is to be paid is not specified by the parties, the obligor is bound to pay *448 the obligee in person or by agent”). 60 Am Jur 2d, Payment, § 26 lists the following alternative methods by “which the payor [may] discharge his obligation” to the payee: (1) by United States mail or other public carrier, (2) by registered mail, (3) by depositing money in a bank acting as the obligee’s agent, (4) by certificate of deposit, (5) by transfer of credit to the obligee, (6) by cancellation of obligee’s note, (7) by extinguishment of mutual debts, (8) by setting apart a specific fund from a designated source, and (9) by directing a third person to make payment.