Jerome GLOVER and Michelle Glover, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV.A. CV–99–547 (DGT).

United States District Court, E.D. New York.

July 24, 2000.

serious injury [sic] to his head, neck, back and limbs including brain damage, contusion, coma, fractures of cervical spine, and ribs," in the amount of $25,000,000. (*Id.*, Ex. A.) The form did not, however, include any claim on behalf of Mrs. Glover. (*Id.*)

Fred R. Profeta, Jr., Profeta & Eisenstein, Jay H. Tannenbaum, New York City, for Plaintiffs.

Sandra L. Levy, Assistant U.S. Attorney, Eastern District of New York, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiffs brought this action under the Federal Tort Claims Act to recover damages arising from injuries sustained by Jerome Glover ("Glover" or "Mr. Glover") during an automobile accident involving a United States Postal Service ("USPS") vehicle. Defendant now moves to dismiss, or in the alternative, for summary judgment, on the grounds that (1) Glover failed to commence this action within sixty days after his claim was denied by the USPS, and (2) his wife, plaintiff Michelle Glover ("Mrs.Glover"), failed to present a notice of claim to the USPS within two years after the accident.

### Background

On February 14, 1998, Glover was injured in a collision with a USPS vehicle. By a letter dated March 4, 1998, and sent by certified mail, return receipt requested, Glover's attorney requested a standard claim form from the USPS and forwarded a copy of a police report regarding the accident. (Gallaudet Decl. ¶ 3, Ex. A.) On June 2, 1998, Glover's attorney mailed a completed claim form to the USPS, which was received on June 4, 1998. (Plybon Decl. ¶ 3, Ex. A.) The form asserted a claim for property damage in the amount of $15,000 caused by the loss of Glover's Porsche automobile, and a claim for Glover's personal injuries, including "multiple

By a letter dated June 24, 1998 and sent to Glover's attorney by certified mail, return receipt requested, the USPS denied Glover's claim on the ground that its investigation indicated that the accident resulted from Glover running a red-light and striking the USPS vehicle. (*Id.*, Ex. C, at 1.) The June 24th letter advised Glover that if he was dissatisfied with the USPS's decision, he was entitled to file suit in the appropriate United States District Court not later than six months from the date of the letter. (*Id.*) The letter further advised:

> Regulations of the Postal Service provide that prior to the commencement of suit and prior to the expiration of the six-month period allowed for filing suit, you have the right to file a request for reconsideration of your client's claim. To be timely filed, the request for reconsideration must be *received* within the six-month period.

(*Id.* at 1–2 (emphasis added).) The letter then supplied the address to which a request for reconsideration should be sent, and closed by explaining the form and required content of such a request. (*Id.* at 2.) The letter also referred Glover's attorney to the USPS regulation that outlines the procedures for submitting requests for reconsideration, 39 C.F.R. § 912.9. (*Id.*)

In a sworn affidavit, Glover's attorney, Jay H. Tannenbaum ("Tannenbaum"), states that on July 27, 1998, he drafted a letter requesting reconsideration of the USPS's decision on the ground that his investigation and the police report indicated that it was not Glover's vehicle, but the USPS vehicle that ran the red light and struck *Glover's* automobile. (Tannen-

baum Aff. ¶ 3, Ex. A.) [1] Glover has submitted an unsigned copy of the letter, which bears the address indicated in the USPS's June 24th letter. (*Id.*, Ex. A.) Tannenbaum further states that he verified that the address was correctly printed on the envelope before giving it to his secretary to send to the USPS's claims office by regular mail, no return receipt requested. (*Id.* ¶ 5, 9.) Tannenbaum's secretary states that she then delivered the letter directly to the post office. (D'Agnese Aff. ¶¶ 1–2.) The USPS, however, has submitted affidavits stating that it has no record of having received Tannenbaum's July 27th letter. (Gallaudet Decl. ¶¶ 4–6; Plybon Decl. ¶¶ 8–11.)

On January 28, 1999—approximately seven months after the USPS denied Glover's claim, plaintiffs filed this complaint, seeking personal injury damages with respect to Mr. Glover and loss of consortium damages with respect to Mrs. Glover. Plaintiffs have not alleged that they or their attorney made any effort during the period from July 27, 1998, to January 28, 1999, to determine whether the July 27th letter was received by the USPS or whether the USPS had decided the request for reconsideration.

Defendant now moves to dismiss, or, in the alternative, for summary judgment.

### Discussion

■ It is well-settled that " 'the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." ' " *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941))). The Federal Tort Claims Act ("FTCA") provides a limited waiver of the sovereign immunity of the United States for certain

torts. *See* 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680. In order to maintain a claim under the FTCA, a plaintiff attempting to assert it must comply with several strictly construed prerequisites to suit. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir.1999) (citing *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) ("[T]he [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.")). Pertinently:

> A tort claim against the United States shall be forever barred unless [1] it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless [2] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). "Unless a plaintiff complies with th[ese] requirements, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim." *Smithsonian*, 189 F.3d at 189 (citing *Kubrick*, 444 U.S. at 117–18, 100 S.Ct. at 357); *accord Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 717 (2d Cir.1998); *see also Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984) (stating that "[s]ome statutory time limits are treated as jurisdictional requirements, with the result that failure to timely file deprives the court of subject matter jurisdiction and the plaintiff's complaint can be dismissed at any time regardless of the excuse proffered for the delay" and citing FTCA). The burden is on the plaintiff to plead and prove compliance with § 2401(b). *See Smithsonian*, 189 F.3d at 189 (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir.1987)).

■ The six-month period for filing an action in district court after final denial of a claim by the agency to which it was

1. Neither party has provided a copy of the    police report.

presented will, however, be tolled by a timely-filed request for reconsideration by the agency that denied the claim—here, the USPS. USPS regulations provide that:

Prior to the commencement of suit and prior to the expiration of the 6 month period provided in 28 U.S.C. 2401(b), a claimant, his duly authorized agent, or legal representative, may file a written request with the postal official who issued the final denial or with the Assistant General Counsel, Claims Division, U.S. Postal Service, Washington, D.C. 20260, for a reconsideration of a final denial of a claim . . . .

39 C.F.R. § 912.9(b). A "request for reconsideration of a final denial of a claim shall be deemed to have been filed *when received* in the office of the official who issued the final denial or in the office of the Assistant General Counsel, Claims Division, U.S. Postal Service, Washington, D.C. 20260–1111." *Id.* § 912.9(c) (emphasis added). If a claimant files a timely request for reconsideration and the USPS fails to render a decision on the request within six months after it is filed, the claimant may, at his option, deem the request to have been denied at any time after the expiration of the six-month period and may then commence an action in district court. *See* 28 U.S.C. § 2675(a); 39 C.F.R. § 912.9(b).

### (1)

Mrs. Glover's claim for loss of consortium must be dismissed for failure to comply the FTCA's two-year limitations period for presenting a notice of claim to the USPS. Under FTCA regulations—the validity of which plaintiffs do not dispute, a claim is "deemed to have been presented [for the purposes of 28 U.S.C. §§ 2401(b), 2675(a)] when a Federal agency *receives* from a claimant, his duly authorized agent

or legal representative" a written notice of claim. 28 C.F.R. § 14.2(a) (emphasis added). The Government has submitted affidavits stating that the USPS has no record of receiving any claim from or on behalf of Mrs. Glover during the two-year limitations period or any time thereafter, *see* Plybon Decl. ¶¶ 10–11; Gallaudet Decl. ¶¶ 4–5,[2] and plaintiffs do not dispute the accuracy of those statements. In a pre-motion letter dated May 14, 1999, plaintiffs' attorney acknowledged that no claim had been made on behalf of Mrs. Glover as of that date, but stated that in light of the fact that the two-year claims period had not yet expired at that point, he would be filing a claim on her behalf within the next five days. (*See* Letter from Plaintiffs' Counsel to Chambers of 5/14/99.) Plaintiffs' attorney, however, apparently never did so, and the time for filing a claim on Mrs. Glover's behalf has now expired. Accordingly, defendant's motion for summary judgment is granted with respect to Mrs. Glover's claims.

### (2)

Mr. Glover's claim presents a more substantive issue for the court. There is no question that Glover complied with § 2401(b)'s requirement that he present a notice of claim to the USPS within two years of the date of the accident. Defendant, however, argues that Glover failed to meet § 2401(b)'s second requirement, viz., that he commence a district court action within six months after the denial of his claim by the USPS. Although Glover acknowledges that his complaint was not filed until seven months after the USPS's denial of his claim, he argues that he is entitled to a tolling of the six-month period on the ground that he mailed a request for reconsideration to the USPS within the six-month period and that the USPS never acted upon his request.

**2.** Defendant styled the present motion as a motion to dismiss, or in the alternative, for summary judgment. Because defendant's motion relies on matters outside the pleadings, the motion will, pursuant to Federal Rule of Procedure 12(b), be construed as a

motion for summary judgment. Plaintiffs have not objected to the court's deciding defendant's motion under Rule 56 and, indeed, expressly requested that the court apply the summary judgment standard to defendant's motion. (*See* Pl.'s Mem. Opp'n at 3.)

In response, the Government correctly notes that under 39 C.F.R. § 912.9(c), a request for reconsideration is deemed to be filed on the date that is received by the USPS, not on the date that it is mailed. The Government has also offered evidence that the USPS has no record of having received a request for reconsideration from Glover during the six-month period after his claim was denied, or indeed, at any time thereafter. Moreover, because Glover's request for reconsideration was sent by regular mail, with no return receipt requested, and because neither he nor his attorney inquired as to the status of the request during the six-month period, Glover has produced, and can produce, no direct proof that the request was actually received.

Nonetheless, Glover argues that the common-law presumption that a properly addressed and stamped, timely-mailed letter will arrive at its destination eliminates the need for direct proof of receipt. *See generally Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932) (mail fraud prosecution) (reciting the common-law "mailbox rule"). Glover contends the affidavits of his attorney and the attorney's secretary swearing that the request was mailed to the USPS just over a month after the final denial of claim, when coupled with the rebuttable presumption of delivery created by the common-law mailbox rule, establish a genuine issue of material fact as to whether the request was received by the USPS within the six-month period, thus precluding the Government's motion.

The Government argues that the common-law mailbox rule has no application in the FTCA context. The Government reasons that allowing the common-law presumption of receipt to operate in the FTCA context would effectively replace the regulatory requirement of proof of "receipt" with a requirement of proof of mailing alone, and thus contravene the principle that a waiver of sovereign immunity must be strictly construed in favor of the

sovereign. In support of its argument, the Government cites a number cases from outside this circuit which have held that, in the context of a FTCA action, proof that a request for reconsideration has been mailed is not sufficient to prove receipt or even to establish a genuine issue of fact on the question of receipt. *See Gonzales v. United States*, No. 96–2167, 1998 WL 39255, at *2–3, 134 F.3d 382 (10th Cir. 1998) (Table) (action against Veterans Administration) (rejecting "the concept of any 'presumed delivery'" in case where plaintiff submitted affidavit by her attorney in which attorney stated that request for reconsideration had been sent (apparently) by regular mail); *Moya v. United States*, 35 F.3d 501, 503–04 (10th Cir.1994) (action against Veterans Administration) (rejecting plaintiff's argument that request should be presumed to have been received where her attorney submitted affidavit stating that request had been mailed by certified mail); *Dark v. United States*, Civ. A. No. 91–1438, 1991 WL 147544, at *2–3 (E.D.Pa. July 26, 1991) (action against USPS) (finding plaintiff's counsel's allegation that he had mailed request and an unsigned copy of request letter insufficient to prove receipt), *aff'd*, 961 F.2d 1566 (3d Cir.1992); *Polk v. United States*, 709 F.Supp. 1473, 1474 (N.D.Iowa 1989) (action against USPS) (holding that even if plaintiff's allegation that he mailed a request was accepted as true, this fact would not prove receipt); *cf. Rhodes v. United States*, No. 92–2016, 1993 WL 212495, at *2, 995 F.2d 1063 (4th Cir.1993) (Table) (action against Animal and Plant Health Inspection Service) (proof of mailing insufficient to establish receipt of initial notice of claim); *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir.1985) (action against Veterans Administration) (same); *Bailey v. United States*, 642 F.2d 344, 346–47 (9th Cir.1981) (action against Air Force) (same).

There are two problems with the Government's argument and the authorities on which it relies. First, it is not clear that

the principle that a waiver of sovereign immunity must be strictly construed in favor of the sovereign applies to agency reconsideration regulations with the same force that it does to the statute itself or to the regulation defining "present[ment]" to mean receipt by the relevant agency. The evident purpose behind individual government agencies', such as the USPS's, adoption of reconsideration procedures is to facilitate the settlement of claims by asking the agency to take a second look at the claim, perhaps with additional evidence. The purpose is not to provide the Government with another opportunity to investigate the legitimacy of claims or to otherwise place a stumbling block in the path of plaintiffs. Any concerns about the Government's ability promptly to investigate claims is dealt with by § 2401(b)'s notice of claim requirement. Moreover, unlike the statutory notice of claim requirement which is mandatory, the regulatory reconsideration procedure is elective. As a result, the policy considerations that underlie the limitations periods set forth in § 2401(b) and which make strict construction appropriate, see *Kubrick,* 444 U.S. at 117, 100 S.Ct. at 357, are (at the very least) not obviously applicable to the USPS's reconsideration regulation.

Second, there is contrary authority on the instant question within this circuit, which, disturbingly, neither party in this action cited in its briefs. In *Cordaro v. Lusardi,* 354 F.Supp. 1147 (S.D.N.Y.1973) (Gurfein, J.), the district court, without discussion, applied the rebuttable presumption of receipt of a mailed letter in denying a Government motion to dismiss for failure to comply with the two-year limitations period for presentment, where a FTCA plaintiff submitted an affidavit from his attorney's secretary stating that

she had sent a notice of claim to the relevant agency by regular mail seventeen months after the accident. *See id.* at 1148–49.[3]

Although *Cordaro* is not controlling authority, it is not necessary for the court to determine whether the decisions relied upon by the Government are more soundly reasoned, for the Government's motion may be decided on other grounds. Regardless of whether those latter decisions are correct in holding that the mailbox rule is not applicable in the FTCA context, they are clearly unwarranted in their apparent conclusion that a rejection of the mailbox rule renders plaintiffs' attorney's affidavit of no evidentiary value whatsoever. For instance, in *Moya,* the Tenth Circuit rejected an attorney's affidavit that he had mailed a request for reconsideration by certified mail, commenting: "There is no independent evidence in the record indicating that plaintiff's request *was ever sent,* let alone received by defendant." *Moya,* 35 F.3d at 503 (emphasis added); *see also Gonzales,* 1998 WL 39255, at *2 (using *shudder* quotes when referring to an attorney's affidavit as " 'evidentiary' matter"). Although the public's—and perhaps the judiciary's—opinion of the integrity of the legal profession is said to be at an all-time low, I know of no legal rule under which an affidavit by an attorney is presumptively false. Nor is there any evidentiary rule that facts within the personal knowledge of a party's attorney that are sworn to by the attorney can be taken as established only if corroborated by non-party testimony or documentary evidence. Nor, finally, was any evidence offered in the cases cited by the Government or in this case that lawyers are as a matter of empirical fact more prone to perjury than other classes of persons. Therefore, in light of the penal-

---

**3.** After denying the Government's motion, the case was tried without a jury, and the district court entered a verdict for the Government. *See Cordaro v. Lusardi,* No. 72 Civ. 3644 MIG, slip op. at 2, 6 (S.D.N.Y. Jan. 7, 1974). Naturally, on appeal the *Cordaro* plaintiff did not challenge the district court's decision on the

motion to dismiss, *see* Brief for Appellant, *Cordaro v. Lusardi,* No. 74–1347 (2d Cir.), and the Second Circuit affirmed without an opinion, *see* 513 F.2d 624 (2d Cir.1975) (Table), thus never passing on the propriety of the district court's mailbox rule holding.

ties of perjury that attach generally to individuals who submit false affidavits to the court,[4] and the disciplinary consequences that attach to attorneys who submit such affidavits,[5] Tannenbaum's and his secretary's affidavits are entitled to some weight, especially on summary judgment, *see Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983) (holding that factual allegations of non-moving party must accepted as true on summary judgment if supported by admissible evidence).

Thus, regardless of whether the *legal presumption* of delivery and receipt applies in FTCA cases, plaintiffs' affidavits, if coupled with *evidence* regarding the actual rate at which the USPS successfully delivers first class mail, could establish as a matter of fact that, or at least create a genuine issue of material fact as to whether, Glover's request for reconsideration was delivered to the USPS claims office in Washington. Nothing in the USPS regulations precludes plaintiffs from proving receipt of a request in this manner, for 39 C.F.R. § 912.9 (or 28 C.F.R. § 14.2, for that matter) does not specify the means by which receipt must proven.[6] In addition, discovery regarding the USPS claims office's internal procedures for handling requests for reconsideration that have been delivered to the office might reveal possible evidence of negligent handling that would explain the absence of a record of receiving Glover's request and permit the inference that request was in fact received by the office, but mislaid, misfiled, or otherwise lost.[7]

■ In reaching this decision, I fully recognize that allowing proof to be taken on the issues of mailing and probability of accurate delivery might encourage unscrupulous attorneys who, through neglect, have failed to comply with § 2401(b)'s filing requirements to submit false affidavits stating that they mailed notices of claim or requests for reconsideration within the pertinent limitations periods.[8] It is most certainly not my intent to encourage perjury. On the other hand, a plaintiff with a meritorious claim should not be penalized by an unfortunate coincidence of negligence on the part of their attorneys in failing to take measures that would have created direct proof of receipt, *see infra* note 9, and negligence on the part of the government agency in mishandling their requests once received. Therefore, until proven otherwise, Tannenbaum's affidavit will be accepted as true, and plaintiffs will be given an opportunity to establish that the USPS claims office received Glover's request for reconsideration.

Accordingly, defendant's motion for summary judgment is denied with leave to renew upon the completion of certain limited discovery, which should be focused as follows: (1) plaintiffs may take discovery relevant to the issues of (a) the rate at which the USPS successfully delivers first class mail, (b) the USPS claims office's procedures for handling mail upon delivery to the Washington office, from the moment

---

4. *See* 18 U.S.C. § 1623.

5. *See* N.Y. Judiciary Law § 90(2) (providing, inter alia, for disbarment of attorneys who violate state bar disciplinary rules). *See generally* 22 N.Y.C.R.R. § 1200.33(a)(4)-(6) (New York Code of Professional Responsibility Disciplinary Rules regarding the making of knowingly false statements and knowing presentation of false evidence by attorneys).

6. This is something that Congress—and presumably agencies such as the USPS—know how to do. *Cf., e.g., Deutsch v. Commissioner*, 599 F.2d 44, 46 (2d Cir.1979) (holding that 26

U.S.C. § 7502 provides exclusive list of means by which taxpayer may prove the date on which a tax court petition was mailed, hence "filed").

7. By the same token, evidence that the USPS's first class mail delivery rate is sufficiently high and the USPS claims office's intra-office mail handling is sufficiently careful, would lead to the rejection of Glover's claim.

8. This apprehension may well explain the *Moya*'s court remarks regarding the evidentiary value of attorney's affidavits on the issue of mailing.

a request letter arrives at the office until the point that the letter lands on a claims officer's desk, (c) the procedures whereby requests for reconsideration are logged into the USPS's claims database, (d) the rate at which requests for reconsideration that have been received by the claims office are misfiled or otherwise lost within the office, and (e) how often the claims office asserts that requests not sent by certified or registered mail were never received; and (2) the Government may take whatever discovery it deems relevant to these issues, including depositions of Tannenbaum and his secretary.

Plaintiffs' additional arguments in opposition to defendant's motion are without merit and, in light of the above ruling, moot.[9]

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted with respect to Mrs. Glover's claim for loss of consortium, but denied with respect to Glover's claims for property damage and personal injury. The parties are given leave to conduct discovery within the guidelines stated above. At the close of discovery, defendant may renew its motion for summary judgment. If defendant elects to do so, both parties may submit supplemental briefs in accord with a schedule to be approved by the court.

SO ORDERED.

9. Plaintiff describes the requirement that he prove actual receipt of his request as an "impossible burden." (Pl.'s Mem. at 3.) Clearly, it is not. Glover's attorney could have easily attached a return receipt card to his request when he mailed it and could have thereby obtained direct proof of receipt. *Cf. Bailey,* 642 F.2d at 347 (finding no excuse for plaintiffs' lack of proof of receipt of their notice of claim where plaintiffs' counsel "did not send it by certified or registered mail, a well known and easy way to establish receipt of the claim"). In his affidavit, plaintiff's attorney responds to this obvious suggestion by pointing out that the FTCA and the USPS regulations do not expressly require that notice be sent by certified or registered mail and explaining that he just decided to avail himself of the option of sending the notice by regular mail. (*See* Tannenbaum Aff. ¶ 9; *see also* Pls.' Mem. Opp'n at 10.) Ironically, in their brief, plaintiffs observe that "[t]he failure of the Post Office to properly deliver the mail is not an impossible event; it is something we have all experienced." (Pls.' Mem. Opp'n at 13.) In light of this acknowledged fact, when an attorney is handling a claim he asserts is worth $25 million and it is an absolute prerequisite to bringing that claim to court that the attorney prove that the Government received a request for reconsideration of the administrative denial of that claim, it is in all probability legal malpractice not to send the notice by certified or registered mail. *Cf. DellaGala v. Brown,* 178 Misc.2d 445, 450, 679 N.Y.S.2d 526, 529 (N.Y.City Ct., 1998) (holding that attorney committed legal malpractice by sending his client $100,000 certified check by regular mail, rather than certi-

fied or registered mail, where settlement check was lost in the mail). To the suggestion that plaintiffs' attorney could have sent the request by certified mail, plaintiffs merely pose the rhetorical question: "But what happens when the post office does not return the receipt?" (Pls.' Mem. Opp'n at 9.) Again, the answer is that a competent attorney handling a claim for such "enormous and permanent injuries," (*id.* at 11), would make an inquiry with the government agency to determine whether it had received the request, if more than a couple of weeks had passed without receiving the return receipt. Moreover, plaintiffs' attorney could have easily placed a telephone call to the USPS claims office to verify whether it had received his request when, after several months had passed, he had received no acknowledgment of, or decision on, the request.

For the same reasons, plaintiffs' argument that Glover's claim should not be dismissed on summary judgment given that all of the evidence relevant to whether the request for reconsideration was received is in the possession and control of the moving party, also fails to state a ground for denying defendant's motion. As defendant aptly responds, the only reason that plaintiffs possess and control no evidence relevant to the issue receipt is that plaintiffs' attorney failed to take the steps necessary to create such evidence, e.g., attaching a return receipt card to the request for reconsideration. (*See* Def.'s Reply Mem. at 5.) Plaintiffs' attorney's own lack of diligence and care in handling his clients' claims is no reason to deny defendant's motion.