07-2064-ag
Rashid v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Submitted: April 14, 2008                 Decided: July 16, 20008

Docket No. 07-2064-ag

- - - - - - - - - - - - - - - - - -
ABDUL RASHID,
          Petitioner,

                v.

MICHAEL B. MUKASEY,[*] Attorney General
of the United States,
          Defendant-Appellant.
- - - - - - - - - - - - - - - - - -

Before: NEWMAN, SACK, and B.D. PARKER, Circuit Judges.

       Petition for review of the April 19, 2007, decision of the Board of Immigration Appeals dismissing a second motion to reopen on the ground of untimeliness. Petitioner contends he is entitled to equitable tolling of the filing deadline because of ineffectiveness of prior counsel. We hold that equitable tolling is not available because Petitioner failed to exercise due diligence after learning of counsel's alleged ineffectiveness.

       Petition denied.

-----------------------

       [*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

Usman B. Ahman, Ahmad & Horn, P.C., Long Island City, N.Y., for Petitioner.

Peter D. Keisler, Asst. Attorney General, Michelle Gorden Latour, Asst. Director, Brendan P. Hogan, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for Respondent.

JON O. NEWMAN, Circuit Judge.

This petition to review a decision of the Board of Immigration Appeals ("BIA") merits a brief opinion to resolve possible ambiguity in our prior decisions concerning equitable tolling. Petitioner Abdul Rashid petitions for review of the BIA's April 19, 2007, decision that denied his second motion to reopen the Board's November 7, 2003, decision holding him removable. The BIA ruled that the motion was untimely and barred by numerical limitation and that Rashid was not entitled to equitable tolling. Rashid sought to avoid the time and numerical bars on the ground of equitable tolling, based on ineffective assistance of prior counsel. We conclude that the BIA was entitled to conclude that equitable tolling was not available because Rashid failed to exercise due diligence after learning of his prior counsel's dereliction. We therefore deny the petition.

## Background

Rashid is a native and citizen of Pakistan. He entered the United States in January 1986. In November 1987, he filed an application for Temporary Resident Status with the former Immigration

and Naturalization Service ("INS"). The INS denied that application in January 1990 for failure to provide evidence of residence and employment history. In November 1994, Rashid, through his attorney, Martin G. Vuval, filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In September 1995, while this application was pending, the INS placed Rashid in deportation proceedings. It charged him with being an alien who entered the United States without inspection under former section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B)(1995). At a 1996 hearing before the IJ, Rashid, through his then attorney, Kenneth Ageloff, conceded his deportability and filed an application for suspension of deportation. In 1998, he withdrew his applications for asylum and protection under the CAT.

After a merits hearing in March 1999, the Immigration Judge ("IJ") issued an oral decision denying Rashid's application for suspension of deportation because Rashid had failed to prove that he would suffer the requisite extreme hardship if deported from the United States. The IJ ordered that Rashid be deported to Pakistan. Rashid retained a new attorney, Marjorie Modestil, and timely appealed this decision to the BIA.

On April 26, 2001, while his appeal to the BIA was pending, Ishaat O Tauheed Al Sunnah filed an I-360 Special Immigrant-Religious Worker Petition on Rashid's behalf. This Petition was approved by the

-3-

INS on March 5, 2002, and Rashid was issued a form I-360. On the basis of this approved petition, Rashid filed an I-485 application to adjust status on April 10, 2002. He was informed by letter on November 26, 2002 that in order to adjust status he would need to submit evidence of his registration in the National Security Entry/Exit Registration System[1] ("NSEERS") to the Department of Homeland Security[2] ("DHS") by December 25, 2003.

On January 6, 2003, the Board affirmed the IJ's March 1999 decision without opinion.

Unhappy with his representation, Rashid consulted another attorney, Issa A. Abdullah. Rashid informed Abdullah of (1) the BIA's decision, (2) the fact that he, Rashid, had an approved I-360, and (3) the fact that he had filed an I-485 and was awaiting an adjustment of status interview. According to Rashid, Abdullah assured Rashid that

---

[1]Instituted by the Attorney General, NSEERS was a response to the "terrorist incidents" of September 11, 2001. 67 Fed. Reg. 52,584 (Aug. 12, 2002). The program imposed "special registration requirements" on "nonimmigrant aliens from certain designated countries," requiring that they report in person to the former INS in order "to ensure their compliance with the terms of their visas and admission, and to ensure the[ir] depart[ure] [from] the United States at the end of their authorized stay." 67 Fed. Reg. 52,584 (Aug. 12, 2002). See also 67 Fed. Reg. 70526 (Nov. 22, 2002). Pakistan was one of the designated countries.

[2]On March 1, 2003, the INS was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security.

he had "a great chance of reopening [his] deportation case since [he] had an approved I-360." Abdullah also "advised [Rashid] that once [his] deportation case was reopened [he] would be eligible to [a]djust [s]tatus." On April 5, 2003, Rashid, then represented by Abdullah, filed a motion to reopen administrative proceedings based upon the approval of his petition for Special Immigrant status, Form I-360. The motion to reopen contained only an approved notice of action, Form I-797, but none of the requisite forms or proof of the filing fee.

On November 7, 2003, the Board denied the motion to reopen on the ground that Rashid had failed to comply with the regulatory requirements for filing a motion to reopen, see 8 C.F.R. §§ 1003.2(c)(1); 1003.8(a); 1245.2(a)(2).

On November 11, 2003, Rashid attended an adjustment of status interview. On January 6, 2004, his application to adjust status was denied because of his failure to comply with NSEERS registration. In response, Abdullah advised Rashid that he would file a motion to reopen and reconsider the denial of Rashid's application to adjust status. The motion was filed on February 5, 2004.

On July 20, 2005, DHS denied Rashid's motion to reopen and reconsider his adjustment of status application because it did not explain why Rashid failed to comply with NSEERS registration. Upset by the denial, Rashid contacted Abdullah's office to discuss the matter, but was informed that Abdullah would be away for two weeks.

Rashid never again attempted to contact Abdullah.

Over a year later, in September 2006, Rashid retained new counsel, Usman B. Ahmad. On September 15, 2006, Ahmad promptly notified Abdullah that he had been retained by Rashid, and that Rashid was seeking to reopen his case on the basis of Abdullah's ineffective assistance. Ahmad requested that Abdullah (1) "contact [his] office to discuss the work . . . [he] d[id] for [Rashid]," and (2) "immediately" forward to his office all documents related to Rashid's case. Ahmad also advised Abdullah that any information he provided might be used in a complaint brought under Matter of Lozada, 19 I. & N. Dec. 637 (B.I.A. 1998). Abdullah did not respond. On October 2, 2006, Rashid filed a complaint against Abdullah with the Grievance Committee for the 2nd & 11th Judicial Districts.

On December 26, 2006, Rashid, represented by Ahmad, filed a motion to reopen his deportation proceeding based upon ineffective assistance of counsel in the filing of his first motion to reopen. The motion was rejected by the BIA for reasons not apparent from the record and resubmitted on January 16, 2007. On April 19, 2007, the BIA denied the motion to reopen. The Board found that the motion to reopen was untimely because it was filed more than three years after its November 7, 2003, decision, as well as numerically barred under 8 C.F.R. § 1003.2(c)(2). In addition, the Board determined that the 90-day limitations period for a motion to reopen, 8 C.F.R.

-6-

§ 1003.2(c)(2), had not been equitably tolled because Rashid failed to explain why his ineffective assistance of counsel claim was not raised until three years after the Board's first decision.

## Discussion

The Board's denial of a motion to reopen is reviewed for an abuse of discretion. See Shou Yung Guo v. Gonzales, 463 F.3d 109, 113 (2d Cir. 2006). The standard is "highly deferential." See Morgan v. Gonzales, 445 F.3d 549, 551 (2d Cir. 2006).

With certain exceptions inapplicable here, an alien may file only one motion to reopen, and that motion must be filed no later than ninety days after the date of the final administrative decision in the proceeding sought to be reopened. 8 C.F.R. § 1003.2(c)(2). Rashid seeks to avoid the time and numerical bars imposed by 8 C.F.R. § 1003.2(c)(2) by contending that the ineffectiveness of his prior counsel entitles him to equitable tolling.

We have recognized that, under the doctrine of equitable tolling, ineffective assistance of counsel can, in some circumstances, afford an alien additional time beyond the limitations period for a motion to reopen and relieve a petitioner from the numerical bar. See Jin Bo Zhao v. INS, 452 F.3d 154, 157-60 (2d Cir. 2006). Equitable tolling is available only if the alien satisfies a two-part test. First, the alien must show that his or her "counsel's performance was so ineffective . . . [that it] impinged upon the fundamental fairness of

-7-

the hearing in violation of the fifth amendment due process clause." Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994) (citation and internal quotation marks omitted); see also Cekic v. INS, 435 F.3d 167, 170 (2d Cir. 2006); Iavorski v. INS, 232 F.3d 124, 135 (2d Cir. 2000). To meet this standard, the alien "must allege facts sufficient to show [(a)] that competent counsel would have acted otherwise, and [(b)] that he was prejudiced by his counsel's performance." Rabiu, 41 F.3d at 882 (internal quotation marks omitted); Cekic, 435 F.3d at 171. Second, "the alien must demonstrate ... that [he] has exercised due diligence in pursuing [his claim]." Iavorski, 232 F.3d at 135; Cekic, 435 F.3d at 171; Jin Hua Wang v. BIA, 508 F.3d 710. Here, the alien "bear[s] the burden of proving that [he] w[as] in fact diligent." Cekic, 435 F.3d at 171. "[B]oth prongs of [the equitable tolling] test must be met." Id. at 170. "Thus, no matter how egregiously ineffective counsel's assistance may have been, an alien will not be entitled to equitable tolling unless he can affirmatively demonstrate that he exercised reasonable due diligence" in pursuing his claim. Id.

Our prior decisions have arguably created an ambiguity as to whether due diligence has to be exercised only in learning of counsel's ineffectiveness or also in presenting a claim thereafter. In Iavorski, we considered equitable tolling in circumstances where fraud or concealment of the existence of a claim prevents an alien

-8-

from timely filing a motion to reopen. We said that such tolling "is permitted <u>until</u> the fraud or concealment is, or should have been, discovered by a reasonable person in the situation." <u>Id.</u> at 134 (emphasis added) (citations omitted). <u>Iavorski</u> did not, however, say whether due diligence is required <u>after</u> the fraud is or should have been discovered.

Thus, it is arguable that <u>Iavorski</u> means that after a fraud or concealment is or should have been discovered, the full limitations period begins to run, and we have no need to inquire into whether an alien is diligent thereafter. But that argument would misconceive the nature of equitable tolling. Restarting a full limitations period occurs only in situations, like securities fraud cases, where a statute itself says that a cause of action <u>accrues</u> when the fraud is or should have been discovered. <u>See</u> <u>Dodds v. Cigna Securities, Inc.</u>, 12 F.3d 346, 350 (2d Cir. 1993).

Equitable tolling, however, does not reset the clock on a statutory limitations period; it is a doctrine that provides a plaintiff with some additional time beyond a limitations period. <u>See</u> <u>Johnson v. Nyack Hospital</u>, 86 F.3d 8, 12 (2d Cir. 1996) ("[E]quitable tolling 'permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before.'") (quoting in a parenthetical <u>Singletary v. Continental Illinois Nat'l Bank & Trust Co. of Chicago</u>, 9 F.3d 1236,

1241 (7th Cir. 1993)); <u>Bowers v. Transportacion Maritima Mexicana, S.A.</u>, 901 F.2d 258, 264 (2d Cir. 1990) ("[T]he equitable tolling doctrine calls for the court to extend the statute of limitations beyond the time of expiration.").

<u>Iavorski</u> never had to consider whether due diligence must be exercised <u>after</u> the plaintiff learns that his counsel is ineffective because in that case the plaintiff was not diligent in finding out that his counsel was ineffective. But the opinion is not inconsistent with a requirement of due diligence after learning of such ineffectiveness because it requires due diligence "during the period the alien seeks to toll," <u>Iavorski</u>, 232 F.3d at 135, which includes the period of time after ineffective assistance of counsel was or should have been discovered but before the motion to reopen is filed. <u>See</u> <u>also</u> <u>id.</u> at 134 ("'Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled.'") (quoting <u>Johnson</u>, 86 F.3d at 12)).

Indeed, the fact that an alien is required to exercise due diligence both before <u>and</u> after he has or should have discovered ineffective assistance of counsel, is supported by our holding in <u>Cekic</u>. In <u>Cekic</u>, we said that "'[f]rom the point at which the ineffective assistance of counsel should have been, or was in fact, discovered, 'an alien must demonstrate . . . that the alien has exercised due diligence in pursuing the case during the period the

-10-

alien seeks to toll,'" Cekic, 435 F.3d at 171 (quoting Iavorski, 232 F.3d at 135). Wang made the matter entirely clear by explicitly dividing the due diligence requirement into a two-phase inquiry concerned with both the period of discovering counsel's ineffectiveness and the period between such discovery and filing the motion to reopen. Wang, 508 F.3d at 715. We therefore conclude that in order to equitably toll the filing deadline for a motion to reopen based on ineffective assistance of counsel, an alien must demonstrate that he or she has exercised due diligence during the entire period he or she seeks to toll. This includes both the period of time before the ineffective assistance of counsel was or should have been discovered and the period from that point until the motion to reopen is filed.

In the instant case, even if we assume that Rashid has demonstrated the ineffectiveness of his former counsel, see Rabiu, 41 F.3d at 882, the record contains a reasonable basis for the BIA's conclusion that Rashid failed to act with diligence in pursuing his ineffective assistance claim.

The Board found, based on Rashid's affidavit, that Rashid "became dissatisfied with his former counsel's actions in July, 2005, after the DHS denied a motion [to reopen and reconsider the denial of Rashid's adjustment of status application] filed by Abdullah." Rashid made a single phone call to Abdullah's office after learning of the

-11-

denial, at which time he was told that Abdullah was away for two weeks. Rashid admits that he then did nothing to pursue his case until September 2006, when he consulted a different lawyer. Thus, fourteen months elapsed from the time he knew or should have known of the allegedly ineffective assistance provided by his former counsel and the time he decided to do something about it.[3]

Rashid maintains that he did not discover the ineffectiveness of his former counsel until his September 2006 meeting with his current

---

[3]In previous cases, we have recognized that aliens in deportation proceedings are often "unfamiliar[] with immigration law," and therefore act "reasonabl[y]" when they rely upon "assurances [from counsel] that their case[s] [are] being pursued." Cekic, 435 F.3d at 171; see also Aris v. Mukasey, 517 F.3d 595, 600 (2008) (noting that aliens are often "unfamiliar with our language and culture" and therefore holding that "misadvice [from an attorney] may constitute ineffective assistance of counsel"). We have also recognized, however, that even an alien who is unfamiliar with the technicalities of immigration law can, under certain circumstances, be expected to comprehend that he has received ineffective assistance without being explicitly told so by an attorney. For example, in Cekic we held that although the petitioners reasonably relied on their attorney's assurances that he was actively pursuing their case, they should have known that they received ineffective assistance once they "were aware that there was an order of removal against them." Cekic, 435 F.3d at 171. By the end of July 2005, Rashid was aware that in each of the three proceedings in which he had been represented by Abdullah, he had been denied relief because of procedural errors. On April 5, 2003, the BIA denied his motion to reopen for failure to comply with the relevant federal regulations, on November 11, 2003, DHS denied his adjustment of status application for failure to offer evidence of NSEERS registration, and on July 20, 2005, DHS denied the motion to reopen and reconsider his adjustment of status application because his non-compliance with NSEERS was not explained. Even someone not schooled in the technicalities of the law "should have" recognized, under these circumstances, that his attorney was ineffective. Iavorski, 232 F.3d at 134; Cekic, 435 F.3d at 171.

-12-

attorney. But, as we have seen, an alien is required to exercise due diligence during the <u>entire</u> period he seeks to toll. Thus, even if Rashid did not immediately realize in July 2005 that his counsel had been ineffective, due diligence required that he follow up with his attorney after the DHS decision, and if he received no response, to obtain new counsel, seek relief from the agency on his own, or take other affirmative action. Rashid does not assert that he did. His claim for equitable tolling was therefore properly rejected. <u>See</u> <u>Iavorski</u>, 232 F.3d at 134 (petitioner, who upon discovery of adverse BIA decision, attempted to reach attorney by phone, but failed to do so, and then did nothing for a period of two years, failed to exercise requisite due diligence).

## Conclusion

For the foregoing reasons, the petition is denied.