**A.Q.C., an infant by her mother and natural guardian, Paquita CASTILLO, Plaintiff,**

v.

**UNITED STATES and Bronx–Lebanon Hospital Center, Defendants.**

**No. 09 Civ. 9113(NRB).**

United States District Court, S.D. New York.

May 14, 2010.

James P. Fitzgerald, John M. Daly, Fitzgerald & Fitzgerald, P.C., Yonkers, NY, for Plaintiff.

Amy A. Barcelo, United States Attorney Office, New York, NY, for United States of America.

Laura M. Papa, Cheryl M. Wendt, Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success, NY, for Bronx–Lebanon Hospital Center.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Before the Court is defendant United States' Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). For the following reasons, the motion is granted.

## *BACKGROUND* [1]

The infant plaintiff was born to her mother, Paquita Castillo, on February 1, 2005, at the Bronx–Lebanon Hospital Center ("Bronx–Lebanon"). She was delivered by, among others, Dr. Wilfrido Arturo Castillo, who had been the plaintiff's mother's regular obstetrician at a prenatal clinic run by Urban Health Plan ("UHP")

---

[1]. The following factual background is drawn from the parties' submissions on this motion. A court ruling on a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may consider evidence outside of the pleadings, such as affidavits. *See, e.g., Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991). Setting aside the allegations concerning the underlying merits of the plaintiff's complaint, the relevant facts required for this decision are not in dispute, although the parties disagree about their legal significance.

and who had delivery privileges at Bronx–Lebanon. (Pl. Mem., Castillo Decl. ¶¶ 5, 11.)

## I. The Allegations of the Amended Complaint

The plaintiff's amended complaint asserts two causes of action: (1) a claim that she was injured due to the negligence and malpractice of employees at the hospital for, *inter alia*, failing to perform a Caesarian section; and (2) a claim for lack of informed consent, based on the administration of oxytocin and pitocin and the performance of a vaginal delivery without the option of a Caesarian section. (Amended Complaint ¶¶ 13, 17.)

According to her mother, the plaintiff remained in the hospital for six days following the delivery. (Pl. Mem., Castillo Decl. ¶ 3.) The plaintiff allegedly suffered "severe and permanent" injuries as a result of the defendants' actions, including "neurological and physical injuries." (Amended Complaint ¶¶ 15, 22.)[2]

## II. The Plaintiff's Retention of Counsel

In December 2005, the plaintiff's mother met with her daughter's "early intervention counselor to discuss [the infant's] therapy schedule and progress." (Pl. Mem., Castillo Decl. ¶ 15.) After reviewing records from the plaintiff's birth, the counselor told the plaintiff's mother that she "should consider looking into whether or not there was any medical malpractice relating to [her] daughter's birth." (*Id.*) This led the plaintiff's mother "to wonder whether [her] daughter's injuries might have been caused by medical malpractice, and raised a doubt in [her] mind about whether [her] daughter's injuries might have been prevented." (*Id.* ¶ 16.) Prior

to this, "no one had ever suggested to [her] or told [her] that [her] daughter's problems might be the result of medical malpractice." (*Id.* ¶ 17.)

The plaintiff's mother first met with someone at her current attorney's office in late February 2006. (*Id.* ¶ 19.) A retainer agreement was signed on April 27, 2006. (*Id.* ¶ 21.)

## III. Investigation by Plaintiff's Counsel

On May 16, 2006, plaintiff's counsel requested medical records from Bronx–Lebanon and UHP. (Pl. Mem., Daly Decl. ¶ 43.) Prenatal records were received from UHP on May 24, 2006, and labor and delivery records were received from Bronx–Lebanon on July 27, 2006. (*Id.*) From then until February 2008, plaintiff's counsel claims that it periodically reviewed the relevant records to determine whether to move forward with the case. (*Id.* ¶¶ 31–34, 43.)

The final review occurred on February 28, 2008. In anticipation of that meeting, an attorney determined that it would be prudent at that point to assess "which medical providers [should] be named as defendants, and why" and to give consideration "to the preferred venue." (Chase Decl., filed May 3, 2010, ¶ 6.) On February 25, 2008, the attorney researched whether UHP was a federally-funded clinic. (*Id.* ¶¶ 7, 8.) She did this "because of a conversation [she] had shortly before that date with an office colleague concerning another, unrelated case in which a doctor" working for or affiliated with "a private, nonprofit agency" had been "deemed" a federal employee. (*Id.* ¶ 7.) She conducted an internet search that led her to a hotline number, 866–382–2435 (866–FTCA–

---

**2.** Despite the sweeping allegations contained in the amended complaint, plaintiff's counsel explained at oral argument that the plaintiff's

injuries were principally limited to problems with the nerves in her shoulders. (4/21/10 Tr. at 3–4.)

HELP), which informed her that UHP had been deemed a federal health clinic. (*Id.* ¶ 8; Pl. Mem., Daly Decl. ¶ 37.)

Under Section 330 of the Public Health Service Act, the federal government provides support for community health centers in medically underserved communities. 42 U.S.C. § 254b. As part of this support, Congress extended medical malpractice coverage to these entities under the Federal Tort Claims Act ("FTCA") through enactment of the Federally Supported Health Centers Assistance Act of 1992 and 1995, which allows the United States to "deem" health centers receiving federal funds under Section 330 and their employees to be "employees" of the federal government and therefore covered for medical malpractice purposes by the FTCA. *See* 42 U.S.C. § 233(g)-(n).

UHP had been deemed a federal clinic since January 1, 2005, and Dr. Castillo was an employee of UHP at all times relevant to the plaintiff's claims. (United States Mem., Hicks Decl. ¶¶ 9, 10.) Thus, any claim for malpractice against Dr. Castillo must be brought pursuant to the FTCA. *See* 42 U.S.C. § 233(a).

Plaintiff's counsel contends that the FTCA hotline was not called earlier "because it was not apparent … that [UHP] was a federally funded clinic covered by the [FTCA] or that Dr. Castillo was a federal employee." (Chase Decl. ¶ 10.) Plaintiff's counsel argues this was the case because Bronx–Lebanon is a private hospital and the address listed by Dr. Castillo on the plaintiff's birth certificate "is a building near the hospital that houses hospital-affiliated specialist groups." (*Id.* ¶ 10.)

## IV. The Plaintiff's Administrative Claim

On March 31, 2008, plaintiff's counsel sent an administrative claim to the United States Department of Health and Human Services ("HHS"). (Pl. Mem., Daly Decl. ¶ 43.) The claim was received by HHS on April 7, 2008. (United States Mem., Hicks Decl. ¶ 3 & Ex. A.) The claim alleged that UHP and Dr. Castillo "committed medical malpractice and negligence," but it did not contain any allegations concerning a lack of informed consent. (United States Mem., Hicks Decl. Ex. A at 1.) [3]

On February 26, 2009, HHS denied the administrative claim on the grounds that it was untimely and that the evidence failed to establish negligence or wrongful conduct on the part of a federal employee. (United States Mem., Hicks Decl. Ex. B at 1.)

## V. Procedural History of the Instant Case

On February 9, 2009, the plaintiff commenced an action in the Supreme Court of the State of New York, Bronx County. The complaint asserted claims for personal injuries and lack of informed consent against Dr. Castillo and Bronx–Lebanon.

On October 22, 2009, pursuant to 28 U.S.C. § 2679(d), the United States Attor-

---

**3.** The plaintiff's administrative claim alleged, in its entirety, as follows:

Defendant, by its facility known as Urban Health Plan, Inc. and by its employee Wilfrido Arturo Castillo, M.D. committed medical malpractice and negligence by, but not limited to, failing to provide proper prenatal case, failing to provide proper labor and delivery care, contraindicated induction of labor with Pitocin, contraindicated vaginal delivery; failure to timely deliver by Cesarean [*sic*] section; failure to prevent fetal distress, failure to prevent birth trauma, failure to prevent shoulder dystocia, failure to diagnose cephalopelvic/fetopelvic dispropostion [*sic*], and failure to appreciate a large for gestational age fetus at the facilities owned by Urban Health Plan, Inc . . . . .

(United States Mem., Hicks Decl. Ex. A at 1.)

ney for the Southern District of New York certified that Dr. Castillo was a federal employee acting within the scope of his employment at the time of the incidents alleged in the complaint, thereby deeming the action as one brought against the United States. Dr. Castillo removed the complaint on that basis to this Court on November 2, 2009. The plaintiff did not contest that the action was removable, and on December 21, 2009, the plaintiff filed an amended complaint substituting the United States in place of Dr. Castillo and maintaining the claims against Bronx–Lebanon.

## DISCUSSION

### I. Applicable Legal Standard

 A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). To defeat a motion to dismiss under Rule 12(b)(1), a plaintiff must affirmatively prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Id.*

### II. The FTCA's Statute of Limitations

The FTCA "constitutes a limited waiver by the United States of its sovereign immunity." *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998). In order to bring a claim under the FTCA, a plaintiff must "comply with several strictly construed prerequisites to suit." *Glover v. United States*, 111 F.Supp.2d 190, 192 (E.D.N.Y.2000).

Before instituting "a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government," a claimant must "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). The failure of an agency to make a final disposition on a claim within six months of its filing may, at the claimant's option, be deemed a final denial. *Id.*

Critically for our purposes, such a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). This limitations period is jurisdictional. *See, e.g., Millares,* 137 F.3d at 719 ("the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit"); *Kemp v. Postal Serv.,* No. 98 Civ. 7280(WHP), 1999 WL 92285 (S.D.N.Y. Feb. 19, 1999) (plaintiff's failure to comply with limitations period established in § 2401(b) deprives federal court of subject matter jurisdiction).

### III. Analysis

The plaintiff has conceded the Government's argument that her claim for lack of informed consent against the United States must be dismissed because her administrative claim alleged only medical malpractice. *(See* 4/21/10 Tr. at 8.)[4] With

---

4. This accords with the result in a recent case in this District finding that, on facts similar to those here, a plaintiff's claim for lack of informed consent should be dismissed when the relevant administrative claim failed to provide sufficient notice of a latent lack of informed consent claim. *M.A.R. ex rel. Reisz v. United*

*States,* No. 09 Civ. 1727(LTS), 2009 WL 3877872, at *4 (S.D.N.Y. Nov. 18, 2009) (noting the absence of controlling authority in the Second Circuit but finding "a majority rule [from other circuits] that holds that a lack of informed consent claim does not automatically inhere in an administrative claim alleging

respect to the remaining malpractice claim against the Government, the plaintiff and the United States agree that the Court lacks subject matter jurisdiction unless either (a) the plaintiff's claim accrued on or after April 7, 2006 (two years before HHS received the' plaintiff's administrative claim)[5] or (b) the plaintiff is entitled to equitable tolling of the statute of limitations.

As we explain in further detail below, we conclude that the claim was not filed within two years of its accrual and that the plaintiff is not entitled to equitable tolling. Accordingly, the plaintiff's malpractice claim against the United States is also dismissed.

### A. Accrual Date of the Plaintiff's Malpractice Claim

■ The Government contends that the plaintiff's claim accrued at the time of her birth, in February 2005, or, alternatively, in December 2005, when an early intervention counselor advised her mother to "consider looking into whether or not there was any medical malpractice relating to [her] daughter's birth." (Pl. Mem., Castillo Decl. ¶ 15; see also 4/21/10 Tr. at 10.) The plaintiff argues that her claims did not accrue until her mother "learned from her attorneys that the records indicated medical malpractice occurred, which was in early August 2006." (Pl. Mem. at 4.) We find that the plaintiff's claims accrued in December 2005.

■ An FTCA claim "accrues on the date that a plaintiff discovers that he has been injured." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008). However, under the "diligence-discovery rule," "accrual may be postponed until the plaintiff has or with reasonable discovery should have discovered the critical facts of both his injury and its cause." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir.1998) (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982)). As the Second Circuit explained in *Valdez:*

it has become settled law that a medical malpractice cause of action accrues under the FTCA once an injured plaintiff has notice that the cause of his injury is in the government's control, not a concurrent but independent cause that would not lead anybody to suspect that the government had been responsible for the injury. The notice must be not of harm but of iatrogenic [doctor-caused] harm, though ... not necessarily of *negligent* iatrogenic harm.

518 F.3d at 178 (emphasis in original; internal quotations omitted).

■ Discovery of the "critical facts" of injury and causation requires "knowledge of, *or knowledge that could lead to,* the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Kronisch*, 150 F.3d at 121 (quoting *Guccione v. United States*, 670 F.Supp. 527, 536 (S.D.N.Y.1987), *aff'd on other grounds*, 847 F.2d 1031 (2d Cir.1988), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990)) (emphasis added). A plaintiff does not need to "know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim," but "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking

---

negligent medical malpractice"); *see supra* note 3.

**5.** *See, e.g., Spinale v. U.S.*, No. 03 Civ. 1704(KMW)(JCF), 2004 WL 50873, at *10 (S.D.N.Y. Jan. 9, 2004) (citing 28 C.F.R. § 14.2(a)) (a formal claim is not filed for purposes of 28 U.S.C. § 2675 until it is received by the relevant federal agency).

legal advice." *Guccione,* 670 F.Supp. at 536.

We think it clear that the plaintiff's claim accrued in December 2005, when the plaintiff's mother was told that she should explore a medical malpractice claim. Nothing before the Court indicates that the plaintiff's mother had any prior awareness that her daughter's medical difficulties might be attributable to malpractice. The discussion gave the plaintiff's mother sufficient information to seek legal advice—which is, in fact, what she did—and therefore counts as the moment of accrual under the governing law.

We reject the plaintiff's suggestion that her claims did not accrue until her attorneys purported to confirm that malpractice had occurred. The Supreme Court's decision in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), rejects this argument. The relevant notice must be of iatrogenic harm, not necessarily of negligent iatrogenic harm. *See Valdez,* 518 F.3d at 180 (holding that FTCA claim accrued no later than the date legal advice was sought but remanding for further proceedings "because the record is silent with respect to the circumstances that led [the infant's mother] to seek legal assistance").

### B. Applicability of Equitable Tolling

Because the plaintiff's administrative claim was filed more than two years after her claims accrued, the only way her malpractice claim against the United States can be saved from dismissal is if the doctrine of equitable tolling applies. A plaintiff seeking equitable tolling must generally establish two elements: (1) that she has been pursuing her rights diligently and (2)

that some extraordinary circumstance prevented her from filing a timely claim. *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). "Equitable tolling is a drastic remedy reserved for 'rare and exceptional circumstances.'" *Lamb v. Potter,* 08 Civ. 0477(NRB), 2008 WL 3539945, at *2 (S.D.N.Y. Aug. 12, 2008) (quoting *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004)).[6]

Even assuming that there were extraordinary circumstances that hindered the plaintiff's ability to file a timely claim, we conclude that she has nevertheless failed to demonstrate the requisite due diligence. In explaining our decision, we first summarize the guidance on this question provided by the Second Circuit in *Valdez ex rel. Donely v. United States,* 518 F.3d 173 (2d Cir.2008), which leaves open the question of whether a plaintiff must demonstrate due diligence in a case such as this. We then explain why requiring such a showing is the only sensible result in the instant case and, finally, why the plaintiff has failed to meet this burden.

#### 1. The *Valdez* Decision

In *Valdez,* a mother, on behalf of herself and her infant daughter, brought a medical malpractice claim in state court within the relevant limitations period that would have applied to a state malpractice claim. The defendants removed the action; the United States was substituted as a party for the defendant doctor, who worked at a federally-funded health care facility; and, on a motion by the United States, the district court dismissed the plaintiffs' claim for failure to file an administrative claim

---

**6.** As the Seventh Circuit has noted, equitable tolling grants a plaintiff "extra time if he needs it," but otherwise "there is no basis for depriving the defendant of the protection of the statute of limitations." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452 (7th Cir. 1990). "Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Id.*

within two years after the cause of action accrued. 518 F.3d at 176–77.

The Court of Appeals remanded the case for further factual findings on the date of accrual but offered some guidance on the doctrine of equitable tolling. In particular, the Court explained that the case before it involved "a special circumstance that may warrant equitable tolling":

[The special circumstance] arises from the defendant's failure to disclose that physicians ... who provide services in private voluntary hospitals and in what appear to be private clinics, are *de jure* federal employees. Patients receiving such treatment are not aware, because they are never told or put on any notice, that the clinics they attend are government-funded or that doctors treating them are government employees. Such an omission does not rise to the level of fraud. Nevertheless, by not formulating a regulation that would require notice to a patient that the doctor rendering service to him is an employee of the United States, the Department of Health & Human Services has created a potential statute of limitations trap in states, such as New York, which—depending on the circumstances—may provide a longer period of time than the FTCA to file a complaint.

518 F.3d at 183. The plaintiff here relies on this theory to support her application for equitable tolling.

The Court of Appeals stopped short of "conclusively" deciding "that a plaintiff's reasonable belief that he has a state law claim may be sufficient to toll the statute of limitations on a related FTCA action without a showing of fraudulent concealment or due diligence." *Id.* at 185. The Court nevertheless observed that a due diligence requirement for the purposes of equitable tolling would be a sensible result, even though it might overlap with the "re-lated" concept of due diligence that exists under the rubric of the diligence-discovery rule governing the date of claim accrual. *Id.*

## 2. The Appropriateness of a Due Diligence Requirement

■ Although the issue was left open by the Second Circuit, we conclude that, at least in a case such as the one before us, a showing of due diligence should be required in order for a plaintiff to avail herself of equitable tolling.

First, as the Supreme Court itself has observed, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). This principle would be undermined by a per se rule granting equitable tolling to any plaintiff with an FTCA claim who failed to file an administrative claim within the limitations period because she reasonably believed she had a state law claim.

Perhaps more importantly, we are mindful of a salient consideration that was not addressed in *Valdez.* In New York, where a medical malpractice action accrues during an injured plaintiff's infancy, Section 208 of New York's Civil Practice Law and Rules permits the applicable statute of limitations to be tolled for a maximum of ten years from the accrual of the claim. *Valdez* involved a medical malpractice claim that was subject to a two-and-a-half year limitations period. 518 F.3d at 176. In a case such as *Valdez*, where the "statute of limitations trap" is six months (*i.e.*, the time between (a) the end of the FTCA limitations period and (b) the state limitations period that would apply absent a doctor's status as a federal employee) it is much easier to take a relatively lenient approach to the necessity of due diligence.

In the instant case, a refusal to hold the plaintiff to the due diligence requirement would eliminate what one might call a "statute of limitations trap," but, seen another way, it would also create a gaping loophole in the FTCA's two-year limitations period. Any infant in New York with a medical malpractice claim against a federally-deemed employee or health center would effectively have ten years to sue the federal government. Such a result would be at odds with the limited waiver of sovereign immunity under the FTCA and the strict adherence to procedural requirements that is otherwise required of plaintiffs suing under the FTCA.

### 3. The Plaintiff's Failure to Exercise Due Diligence

■ The Government argues that the plaintiff has failed to demonstrate diligence sufficient to warrant equitable tolling of any sort, while the plaintiff argues otherwise and contends that, at a minimum, she is entitled to equitable tolling through April 27, 2006, when the plaintiff's mother retained her attorney. We agree with the Government.

■■ Equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," but it "requires a party to pass with reasonable diligence through the period it seeks to have tolled." *Johnson v. Nyack*, 86 F.3d 8, 12 (2d Cir.1996); *accord Rashid v. Mukasey*, 533 F.3d 127, 131–32 (2d Cir.2008). A plaintiff seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.2000).

Here, the undisputed evidence indicates that literally nothing was done to determine whether Dr. Castillo was a federally-deemed employee during the two years following the accrual of the plaintiff's claims. From December 2005 to April 2006, the plaintiff's mother identified and retained an attorney. Once retained, plaintiff's counsel, despite having the information necessary to ascertain the proper defendants shortly after their retention, merely conducted three periodic, internal reviews over the following year-and-a-half to determine whether the case should move forward. (*See* Pl. Mem., Daly Decl. ¶ 43.)

It was not until February 25, 2008 that an attorney at the firm thought to call the 866–FTCA–HELP hotline. (Chase Decl. ¶ 7.) That hotline, however, has been in existence since 2001 and is not the only publicly available source of information on federally-deemed health centers. (United States Rep. Mem., Nair Decl. ¶ 5.) The Health Resources and Services Administration ("HRSA") operates a website that lists federally-deemed health centers, including UHP, where the plaintiff received her prenatal care from Dr. Castillo. (United States Rep. Mem., Nair Decl. ¶ 6.) HRSA also maintained a field office in New York during the relevant time period where officials were available for inquiries regarding the federally-deemed status of health centers. (*Id.* ¶ 4.) These undisputed facts on the availability of data directly rebut the claim by plaintiff's counsel that information on the funding status of UHP "was not readily discernable" (Pl. Mem. at 13).

Plaintiff's counsel has sought to deflect responsibility for the firm's inadvertence by claiming that there was no reason to believe a federal entity was implicated in this case, because Bronx–Lebanon is a private hospital and the address listed for Dr.

Castillo on the plaintiff's birth certificate is a building that houses hospital-affiliated specialist groups. (*See* Chase Decl. ¶ 10.) The argument overlooks several key points: (1) the firm knew that the plaintiff's mother received her prenatal care from UHP as early as May 16, 2006 (when it requested medical records from the facility) (*see* Pl. Mem., Daly Decl. Ex. 4); (2) the plaintiff's mother, if asked, could presumably have explained that she met Dr. Castillo through her treatment at UHP (*see* Pl. Mem., Castillo Decl. ¶¶ 4–5); and (3) even if the plaintiff's mother was never asked a question as simple as where she met or obtained her doctor, that would have presumably become clear through the presence of his name in the medical records received from UHP on May 24, 2006 (*see* Pl. Mem., Daly Decl. ¶ 43). Thus, there were multiple avenues that should have led a reasonably prudent attorney to explore whether Dr. Castillo was deemed a federal employee by virtue of his affiliation with UHP.

Moreover, plaintiff's counsel claims that it was deliberately waiting to file suit (on the assumption that the plaintiff's case was premised on state law) in order to "focus[ ] on determining the long term effects of the acts of malpractice." (Daly Decl., filed May 3, 2010, ¶ 19.) Far from excusing the firm's conduct, this merely underscores the problem with the plaintiff's theory. Were we to accept that this is an acceptable explanation for failing to inquire into the federally-deemed status of Dr. Castillo, it would open what we have described above as a gaping loophole in the FTCA limitations period. Anyone who thought they had a state malpractice claim on behalf of an infant in New York could wait upwards of ten years before stumbling upon information that one of their potential defendants is, in fact, a federally-deemed employee and then seek to be excused from the federal limitations period on that basis.

■ Alternatively, the plaintiff seeks to extend the limitations period by four months, to credit the plaintiff's mother for the time it took her to retain an attorney. If we were to measure the two years from the retention date (April 27, 2006), the filing of the plaintiff's administrative claim would indeed have been timely. Additionally, despite the language in cases indicating that equitable tolling does not "reset the clock on a statutory limitations period," *Rashid*, 533 F.3d at 131, or "stop the clock" on the limitations period, *Adkins v. Warden*, 585 F.Supp.2d 286, 299 (D.Conn. 2008), there is support for the suggestion that a plaintiff may be able to partially toll a statute of limitations if the necessary conditions for equitable tolling are satisfied for a narrow period of time within the limitations period, *see, e.g., Hizbullahankhamon v. Walker*, 255 F.3d 65, 74–76 (2d Cir.2001).

It would nevertheless be inappropriate to toll the statute of limitations here for the period leading up to the retention of plaintiff's counsel. Even granting that the plaintiff's mother was diligent in pursuing her daughter's claim, this has nothing to do with the extraordinary circumstance (Dr. Castillo's status as a federally-deemed employee) that might warrant tolling. For the doctrine of equitable tolling to be principled, the requisite due diligence must bear some relationship to the extraordinary circumstance at issue. To hold otherwise would be to effectively postpone the date of accrual to the date that the plaintiff hired an attorney. This would be at odds with the general rule that an FTCA claim accrues when the plaintiff has notice of the underlying facts of her injury and its cause, not when she becomes aware that she might have a legal claim. *See general-*

*ly Kubrick*, 444 U.S. 111 at 119–22, 100 S.Ct. 352.

Our conclusion accords with the Second Circuit's guidance in *Valdez*. As we explained earlier, we see no reason to depart here from the longstanding rule that a plaintiff seeking the relief of equitable tolling must also demonstrate due diligence—diligence that must logically bear some relationship to the extraordinary circumstance at issue.[7] Critically, nothing in *Valdez* indicates that there was evidence before the Court of Appeals concerning the publicly available sources of information on federally-deemed health centers. Once the availability of such sources is apparent, and when there is no showing that erroneous information was provided in a particular case, there is no compelling reason to grant a plaintiff the extraordinary relief of equitable tolling.[8]

\* \* \*

Before concluding, we feel it necessary to underscore our serious concern with the way that the plaintiff's case was handled by her attorneys. The plaintiff's firm has served as counsel, since at least 2004, for infant plaintiffs in cases alleging medical malpractice against federally-deemed employees. (United States Rep. Mem. at 4.). Indeed, the firm runs television and subway advertisements claiming to offer competent legal representation specifically in infant medical malpractice cases and generally holds itself out as experienced in the field of medical malpractice litigation. (*See* Pl. Mem., Castillo Decl. ¶ 18; Fitzgerald & Fitzgerald website, http://www.lawfitz.com (last accessed May 10, 2010).)

Furthermore, the issue of federally-funded health centers in FTCA cases is not an obscure or infrequent one: prior to *Valdez*, cases were often dismissed because plaintiffs had failed to file timely FTCA claims against federally-deemed entities, *see Valdez*, 518 F.3d at 183 (collecting cases), and the HRSA website currently lists 238 federally-funded health centers in the New York area alone, *see* http://findahealthcenter.hrsa.gov (last visited May 10, 2010). It is ironic, then, that the plaintiff's firm, which holds itself out as having expertise that can generate multi-million dollar verdicts in infant medical malpractice cases, failed to conduct a very simple inquiry into UHP's status until long after learning that the plaintiff's mother received her prenatal care at the clinic.

For her part, the plaintiff's mother did what could be reasonably expected of someone in her position: once apprised of the possibility of malpractice, she retained an attorney within a matter of months. At that point, as with most any litigant, she placed her trust in the competence of her counsel. Nevertheless, plaintiff's counsel neglected to conduct what should have been routine due diligence in a case such

---

7. If, for instance, plaintiff's counsel had called the 866–FTCA–HELP hotline within two years of December 2005 but had been erroneously informed that UHP was not a federally-deemed health center, this might have satisfied the due diligence requirement and warranted equitable tolling. We know, however, that plaintiff's counsel eventually received accurate information from the hotline, and thus a simple phone call within the limitations period would almost certainly have yielded the information necessary to file a timely FTCA claim.

8. The Government's evidence of publicly available sources also provides a clear distinction between this case and the Third Circuit's decision in *Santos ex rel. Beato v. United States*, 559 F.3d 189 (3d Cir.2009), which the plaintiff attempts to rely on. The court there specifically noted the absence of evidence concerning publicly available sources of information on the federally-deemed health center in that case. *Id.* at 202.

**464**

as this.[9]

Unfortunately for the plaintiff and her mother, having chosen the Fitzgerald & Fitzgerald law firm as counsel, they bear the consequences of their attorneys' missteps unless they can shift any such consequences by a successful malpractice claim.

Fortunately, however, the plaintiff is not without other remedies. Her case against Bronx–Lebanon remains. Indeed, if the plaintiff were to prevail, the hospital may be able to subsequently bring a claim for indemnity or contribution against the United States under the FTCA.

### CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction (docket no. 8) is granted. As the parties have recognized, in the absence of the United States, the Court lacks subject matter jurisdiction over the remaining dispute between the plaintiff and Bronx–Lebanon. Accordingly, the plaintiff's case against Bronx–Lebanon is dismissed without prejudice to its renewal in an appropriate forum.

Plaintiff's counsel is directed to send/deliver a copy of this Memorandum and Order to the plaintiff.

Finally, the Clerk of the Court is respectfully directed to close this case.

---

9. Indeed, plaintiff's counsel should have been even more attuned to the issue of federally-deemed health centers when this case arose. Because the limitations period lapsed prior to *Valdez*, there was no reason to believe when counsel undertook this representation that there was a realistic option of successfully applying for an equitable toll of the statute of limitations.