NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1024
_____

DESIDERIO SANTIAGO SAPON-CANIZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-950-845)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2012
Before:  SCIRICA, VANASKIE and COWEN, Circuit Judges.

(Filed: October 19, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM.

Desiderio Santiago Sapon-Caniz,[1] a citizen of Guatemala, entered the United

States near Brownville, Texas, in September 2002.  The Government served him in

_____

[1] As the parties do, we will refer to the petitioner as Sapon.

person with a notice to appear on October 1, 2002, charging him as removable for being present in the United States without having been admitted or paroled.

The procedural history is lengthy, but relevant to the claims Sapon makes, so we will outline it in some detail. Sapon's initial hearing was scheduled for October 15, 2002. On October 8, 2002, attorney Stephen Ramirez filed a notice of appearance in Sapon's case and requested a continuance. The request was granted, the hearing date was reset to October 29, 2002, and notice was sent to Ramirez at his law office. Shortly thereafter, Sapon was released from custody and provided an address on Lexington Street in Trenton, New Jersey. On November 1, 2002, the master hearing date was set for April 9, 2003, and notice was sent to Ramirez. On November 12, 2002, Sapon provided a new address on Anderson Street in Trenton (where his brother lived).

On April 4, 2003, Ramirez sought to withdraw as counsel. He stated that he had been unable to contact Sapon. He explained that he had written Sapon at his last known address on Anderson Street in Trenton to tell him of the hearing date and left telephone messages for him to call Ramirez's law office. His letter was not returned, so he assumed that Sapon knew about the hearing date, but Sapon had not written him or returned any of his phone calls. Months later, Ramirez was permitted to withdraw from the case.

On April 9, 2003, the Immigration Court sent Ramirez, at his law office, and Sapon, at both the Trenton addresses, a notice that his master hearing date had been postponed until October 22, 2003. On April 28, 2003, attorney Shereen Chen, then working for the firm then known as Ballard, Spahr, Andrews & Ingersoll, LLP, entered

her appearance for Sapon and requested that the venue be changed to Newark, New Jersey.  In doing so, she stated that Sapon was living at the Anderson Street address in Trenton.  The venue was changed and the hearing date reset to October 7, 2003.

On September 24, 2003, Chen's legal secretary sent Sapon a letter by certified mail to the Anderson Street address, informing him that he was scheduled to appear in Immigration Court on October 7, 2003, and directing him to contact her immediately to schedule an appointment to speak to Chen.  The certified mail return receipt was signed "Santiago Sapon."  On the day of the hearing, Chen appeared, but Sapon did not.  Chen moved to withdraw as counsel; the Immigration Judge ("IJ") permitted her to do so.  On the Government's motion, the IJ held the hearing with Sapon *in absentia*.

On October 8, 2003, the IJ issued a written decision in which she found that Sapon had been personally served with the notice to appear and had been provided with notice of the hearing (as the notice had been mailed to Sapon's counsel of record and counsel had conceded proper service).  The IJ sustained the charge of removability based on the evidence presented by the Government at the hearing and further found that Sapon's failure to appear constituted abandonment of any application for relief.  She ordered Sapon removed.

In January 2010, Sapon, through new counsel, Lymari Casta, moved to rescind the *in absentia* removal order and to reopen the proceedings.  He argued that he had been ordered removed without having received a notice to appear or a notice of hearing.  He also contended that if the proceedings were reopened, he would be entitled to cancellation

of removal. The IJ denied the motion on February 5, 2010, concluding that notice of the hearing was properly served on his attorney and that Sapon failed to maintain contact with her despite her efforts to stay in contact with him. The IJ found that Sapon had evaded the notice of the hearing. The IJ also held that Sapon provided no evidence that he was eligible for cancellation of removal.

On February 17, 2010, Sapon, through attorney Lila Sljivar, a member of the bar in Michigan, filed a "motion to reopen and reconsider *sua sponte*." He again argued that he had no notice of the 2003 hearing and stated that his motion and its attachments were filed in order to show that he was eligible for cancellation of removal. The IJ denied the motion, noting that Sapon presented no new argument or evidence that he did not receive notice of the hearing through some fault of his attorney. To the extent that Sapon was making an ineffective assistance of counsel claim, the IJ held that he had not met the requirements of In re Lozada, 19 I. & N. Dec. 637 (BIA 1988), and had not explained his failure to do so. The IJ also noted Sapon's concession in his motion that his failure to appear at the hearing "could have been because of his evasion of the immigration laws." The IJ considered Sapon's evidence relating to cancellation of removal and concluded that Sapon was not *prima facie* eligible for cancellation.

Sapon, through Sljivar, filed an appeal with the Board of Immigration Appeals ("BIA"). He again stated that he did not receive notice of his hearing and contended that he had shown that he was eligible for cancellation, noting in particular his minor United States citizen child whom, he asserted, would suffer malnutrition if she went to

4

Guatemala with him. The BIA dismissed the appeal. The BIA explained that Sapon suggested that his failure to appear at his hearing was caused by "exceptional circumstances" because his counsel did not notify him of the hearing date, but he did not file a request for rescission of his order within 180 days. The BIA held that Sapon had not satisfied the Lozada requirements and that there was no reason to toll the 180-day period. The BIA also agreed with the IJ's decision not to reopen the proceedings *sua sponte*.

Sapon, still represented by Sljivar, then filed a motion to reopen *sua sponte* with the BIA. He sought reopening based on his claims that he had never received the hearing notice through no fault of his own and that he was entitled to cancellation of removal. The BIA denied the motion on May 31, 2011. The BIA ruled that Sapon failed to establish he sought reopening within 180 days based on his failure to appear due to exceptional circumstances or that he did not receive notice of the hearing through no fault of his own. The BIA also noted that neither it nor the IJ had previously found any exceptional situation that would warrant reopening, and that the evidence Sapon submitted did not change its conclusion.

In July 2011, represented by new counsel, Sapon filed another motion to reopen. He alleged that Chen (whom he called his "first attorney") had provided ineffective assistance of counsel because she never notified him of the hearing date (he further asserted that he could not contact her because her telephone had been disconnected). He also alleged that Sljivar (whom he described as his "second attorney") was ineffective

5

because she did not interview him in depth about why he came to the United States and why he feared returning to Guatemala.  He contended that her failure to conduct an in-depth interview kept him unaware of the transfer of his case to New Jersey or the new hearing date.  He also took issue with the fact that his attorney had stated that he had failed to appear at his hearing because he was evading immigration laws and did not keep in touch with his attorney or his brother.  Sapon also cited Sljivar's failure to submit evidence and documents in support of his motion to reopen.  He stated that he had filed an attorney grievance against Sljivar with the New Jersey Ethics Committee.  He contended that he had been unable to file a bar complaint against Chen because he is unsure of her correct name and address.  He characterized the ineffective assistance of counsel as a due process violation.  Sapon further explained that he sought reopening, on the basis of the alleged ineffectiveness or the BIA's power to reopen proceedings *sua sponte*, in order to file an asylum application based on his experiences as a Quiché Indian in Guatemala.

On December 8, 2011, the BIA denied Sapon's motion.  The BIA held that Sapon failed to meet the requirements of <u>Lozada</u>  and <u>In re Assaad</u>, 23 I. & N. Dec. 553 (BIA 2003).  The BIA noted that Sapon had submitted a grievance form naming Sljivar, but concluded that there was no showing that the complaint had been mailed or filed or that Sljivar has been provided with an opportunity to respond to the allegations.  The BIA found no evidence that Sapon had tried to comply with the <u>Lozada</u> requirements relating to any other attorney and also pointed out that Chen was permitted to withdraw after she

6

provided proof that Sapon had failed to maintain contact with her. Accordingly, the BIA

concluded that the allegations of ineffective assistance of counsel were without

foundation. The BIA also ruled that neither the new evidence (including the asylum

application and the grievance form) nor the evidence submitted previously showed an

exceptional situation warranting *sua sponte* reopening.

Sapon appeals. We have jurisdiction over his petition pursuant to 8 U.S.C.

§ 1252(a)(1).[2] Our review of the BIA's decision to deny a motion to reopen is under a

highly deferential abuse of discretion standard. See Guo v. Ashcroft, 386 F. 3d 556, 562

(3d Cir. 2004). The discretionary decision is not disturbed unless it is found to be

arbitrary, irrational, or contrary to law. See id.

We will deny the petition for review because we cannot say the BIA's decision

was arbitrary, irrational, or contrary to law. An *in abstenia* final order of removal may be

rescinded upon a motion to reopen filed within 180 days of the date of the order if the

alien demonstrates exceptional circumstances caused the failure to appear. 8 U.S.C.

§ 1229a(b)(5)(C)(i). The time limit for filing a motion to reopen is subject to equitable

tolling. See Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005). Ineffective assistance

of counsel can serve as a basis for equitable tolling if substantiated and accompanied by a

showing of due diligence. See Mahmood v. Gonzales, 427 F.3d 248, 252 (3d Cir. 2005).

---

[2] We note, however, that our review is limited to the BIA's latest decision in Sapon's
case. See Stone v. INS, 514 U.S. 386, 405 (1995); Nocon v. INS, 789 F.2d 1028, 1033
(3d Cir. 1986).

7

Due diligence must be exercised over the entire period for which tolling is desired.  See

Rashid v. Mukasey, 533 F.3d 127, 132 (2d Cir. 2008).  "This includes both the period of

time before the ineffective assistance of counsel was or should have been discovered and

the period from that point until the motion to reopen is filed."  Id.

To rely on an ineffective assistance of counsel claim to toll a time limit, the BIA

requires an alien to comply with the procedural requirements of In re Lozada, a

requirement we have held to be reasonable.  See Lu v. Ashcroft, 259 F.3d 127, 132 (3d

Cir. 2001).  The BIA requires an affidavit detailing the relevant facts; a response from

counsel to the affidavit (or a statement of counsel's failure or refusal to respond); and

documentation demonstrating that a disciplinary complaint against counsel was filed with

the appropriate authority.  See id. 259 F.3d at 132-34.  The failure to file a disciplinary

complaint "is not fatal if a petitioner provides a reasonable explanation for his or her

decision."  Id. at 134.

As the BIA concluded, Sapon did not comply with the Lozada requirements.  He

made no showing that he attempted to comply with them against any of his attorneys

except for Sljivar.  From the evidence he presented, his attempt was deficient.  He

provided no response from Sljivar (nor any statement of her failure to respond).

Although he provided a grievance form, there was no showing that the form had been

mailed or filed.  Furthermore, the grievance form was directed to the New Jersey Ethics

Committee; Sljivar, when she entered her appearance for Sapon, identified herself as a

member of the bar in Michigan.  Sapon also provided an excuse for not filing a complaint

8

against Chen; he stated that he could not remember her full name. However, her full name is in the record; it is likely also available from the large law firm that employed her at the time she represented Sapon.

We note that Sapon argues that he need not have complied with Lozada because the ineffectiveness of his counsel is apparent from the record. However, the main basis for his ineffectiveness claim against Chen (that she did not stay in contact with him to notify him of the hearing date) is not supported by the record. Before being permitted to withdraw, Chen provided evidence that Sapon did not stay in touch with her despite her efforts to contact him. (Notably, Sapon's first attorney was permitted to withdraw because of a similar experience with Sapon.) Sapon also urges that Sljivar's ineffectiveness is obvious because she conceded that he had evaded the immigration laws and had not kept in touch with his attorney or brother and because she did not better support the motion to reopen and seek cancellation. However, Sljivar may have been hard pressed to challenge the IJ's finding and the evidence that Sapon had evaded the immigration laws. Furthermore, her failure to support the motion and cancellation request could have been because there was no evidence to support it. In short, this is not a case in which the ineffectiveness is apparent from the record. Accordingly, the BIA's decision not to reopen the case because of Sapon's failure to comply with the Lozada requirements was not unreasonable. The failure also served as a bar to Sapon's claim that the ineffectiveness was a due process violation under the Fifth Amendment. See Fadiga v. Attorney Gen. of the United States, 488 F.3d 142, 155 (3d Cir. 2007).

9

We have considered Sapon's other arguments and conclude that they are without merit. Briefly stated, although we have jurisdiction to review the BIA's ruling on whether Sapon presented an "exceptional situation" (or, stated otherwise, whether Sapon has established a prima facie case for *sua sponte* relief), see Cruz v. Attorney Gen. of the United States, 452 F.3d 240, 250 (3d Cir. 2006), unlike in Cruz, there is no evidence that the BIA was ignoring a general policy it has established, see id. at 246 n.3 & 249-50. Cf. Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003). Also, we reject Sapon's argument that the BIA failed to apply its own precedent, namely In re M-R-A-, 24 I. & N. Dec. 665 (BIA 2008). Given the facts of this case, In re M-R-A- is inapplicable.

For these reasons, we conclude that the BIA committed no error in denying Sapon's latest motion to reopen, and we will deny the petition for review.